## MORRIS MEYER *vs.* ISAAC FRENKIL.

*Evidences offer of compromise; verbal facts; declarations before
an arbitrator. Husband and wife; implied agency of wife.
Contracts: failure to perform; fault of defendant.
Action for work and materials furnished.
Prayers: misleading.*

When the object of testimony is to prove the fact that an
offer was made to execute and deliver a note, and not that
the note was actually delivered, the evidence may be given
without the production of the note.                    p. 415

Evidence of an offer of a compromise is not admissible; but
the statement and declarations before an arbitrator may be
proved by him or by any one else who heard them.     p. 416

While a wife has no authority to bind her husband as her
agent, merely by virtue of the matrimonial relation, yet in
the absence of the husband there is a presumption that she

has a general authority to exercise ordinary control over property left in her possession by him.                    p. 418

Certain repairs and interior alterations required by the defendant to be done on his house could not be completed by the plaintiff, who had contracted to do the work, because not permitted by the wife to enter the premises. In an action for work done and materials furnished, it was *held,* that in the absence of evidence that the husband disavowed her act he was bound by it, and that the plaintiff was entitled to recover.
pp. 420-421

A prayer calculated to confuse the jury presents no reversible error, if it appears from the verdict that the jury were not affected by it.                                    p. 421

*Decided November 15th, 1911.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The following are the prayers of the plaintiff that were directed by the Court to be set out in full:

*1st Prayer*—The plaintiff prays the Court to instruct the jury that it is the duty of the jury to determine whether or not the whole contract between the plaintiff and the defendant was embraced in the paper writing offered in evidence signed by M. Meyer and dated November 7th, 1904, and if they shall find that the whole of the contract was not embraced in said paper writing, then it will be their duty further to find from all the evidence in the case, what the said contract was (*Granted.*)

*2nd Prayer*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that there was a contract for certain materials in question to be furnished and work to be done by the plaintiff for the defendant at and for a special sum, and shall further find that other materials in question were furnished and other work done by the plaintiff for the defendant at his request and shall further find that other materials were furnished and work done by the

plaintiff at the request of defendant's wife, in connection with the work done by the plaintiff at defendant's request, and shall further find that all such work so done and all such materials so provided were accepted by the defendant, then their verdict must be for the plaintiff for the sum, if any, due under said contract, together with the fair and reasonable value of the extra materials furnished and extra work done, if any, less such sums, if any, as they shall find have been previously paid by the defendant to the plaintiff. (*Granted.*)

*3rd Prayer*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that there was a contract for certain materials in question to be furnished and work to be done by the plaintiff for the defendant at and for a specific sum, and shall further find that other materials in question were to be furnished and other work to be done by the plaintiff for the defendant, and that the work specified in the contract, to wit:—The three sanitary closets, had been performed, and shall further find that the completion of the other work was prevented by the defendant or by the defendant's wife who was in the occupancy and possession of the defendant's house when said work was to be done, if they so find, then the plaintiff is entitled to recover the fair and reasonable value of the materials furnished and work done less such sums, if any, as the jury may find shall have been previously paid by the defendant to the plaintiff. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Israel Gomborov* (with whom was *Adrian Posey* and *Edward Colgan* on the brief), for the appellant.

*James M. Munroe,* for the appellee.

414        MEYER *vs.* FRENKIL.

PEARCE, J., delivered the opinion of the Court.

This is the second appeal in this case, the former appeal being reported in 113 Md., pages 36 to 47.

The suit was brought by the appellee, Isaac Frenkil, against the appellant, Morris Meyer, and his wife, Hilda Meyer, in the Circuit Court for Charles County, to recover a balance of $898.95 claimed to be due by the two defendants to the plaintiff, for work done and materials furnished by the plaintiff in the improvement of a house in the City of Baltimore, owned by the defendant, Morris Meyer.

A verdict was rendered in favor of the defendant, Hilda Meyer, and a verdict for the plaintiff was rendered against the defendant, Morris Meyer, for the sum of $692.75 upon which judgment was entered, and upon appeal to this Court, that judgment was reversed for error in ruling upon one of the prayers, and a new trial was awarded.

After the case was remanded to the Circuit Court for Charles County, it was removed for trial to the Circuit Court for Anne Arundel County, and after the record had been received and filed in that Court, the name of Hilda Meyer as one of said defendants was, on the plaintiff's motion, stricken out by the order of the Court, and the trial proceeded against Morris Meyer alone, resulting in a verdict and judgment against him for $800, with interest from January 26th, 1911, from which judgment this appeal is taken.

There were seven bills of exception, six to the refusal of the Court to strike out certain testimony, and one to the rulings on the prayers.

The plaintiff testified that about November 7th, 1904, he agreed with the defendant to do certain work and furnish certain materials for the house, 126 South Eden Street, Baltimore; that for a part of this work, the putting in three sanitary closets, there was a written agreement dated November 7th, 1904, for the sum of $200, and that as to the remaining work and materials he was to be paid its reasonable value; that some of the work and materials was ordered by the

defendant, and some by his wife, Hilda Meyer, and that all the work and material so ordered was still in the defendant's house; that the total amount of his charges for work and material was $1,373.95, and the total payments made on account were $475, leaving due him a balance of $898.95; that sometime in March, 1905, he stopped work because he could not get his money in time, and that he and the defendant then decided to arbitrate their disputes, and for that purpose went to the office of one Simon Buckner; that there was no submission nor decision, but that while in said office, the defendant offered him a note for $800 in settlement of his claim, which he refused, as it was unindorsed. The defendant objected to this testimony "as to the offer of the note (it not being produced)" and moved the Court to strike the same out, and the first exception is to the refusal of the Court to grant that motion. Simon Buckner testified to the above offer of a note of $800, in settlement of plaintiff's claim, and the defendant objected thereto and moved the Court to strike it out, and the third exception is to the refusal of the Court to grant this motion.

The apparent ground of the first exception is that the note was not produced. To this objection there are two satisfactory answers: 1st That it does not certainly appear that any note was actually executed and offered, but rather that an offer was made to execute and deliver such note; 2nd, that even if such a note was actually made and tendered for acceptance, its production in evidence would not be necessary, because the object of the testimony was not to prove the contents or form of the note, but only to prove the fact that such an offer was made. *Cramer* v. *Shriner,* 18 Md. 147.

But the ground in support of both exceptions as presented in the brief of the appellant, and at the argument, was that the offer was made by way of compromise. The general rule that offers by a party with a view to compromise are inadmissible, is too well settled to require the citation of authority, "but there is an exception to this rule, under which admissions of particular facts may be received, as stated

and applied by this Court in *Calvert* v. *Freibus,* 48 Md. 45."
*Acker, Merrall & Co.* v. *McGaw,* 106 Md. 560. In *Calvert* v.
*Freibus, supra,* the offer was to prove the statement of an
account · made by the plaintiff before referees chosen to
adjust the account, and then acting as such referees. It
does not appear from the record in that case why an award
was not made, but suit was subsequently brought upon the
same cause of action, just as in this case. In *Calvert* v. *Frei-
bus,* JUDGE ALVEY said: "The facts embraced in the offer
rejected by the Court do not present the case of a proposition
to compromise; but the case of a pending controversy before
arbitrators, where statements and declarations were made by
the parties, and where the latter were contesting their rights
as adversely as before any other tribunal. In such case, the
statements and admissions made by a party contesting, are
admissible, and may be proved by an arbitrator before whom
they are made as by any other person hearing them." The
facts of the present case in our opinion bring it fairly within
the authority of *Calvert* v. *Freibus,* and there was, there-
fore, no error in the rulings on these two exceptions.

The plaintiff then further testified over the objection of
the defendant that sometime in March, 1905, he called at
the house in question with some workmen for the purpose
of completing the work, and that the wife of the defendant,
Hilda Meyer, and another woman who he thought was
Meyer's mother-in-law, and who were in the possession of the
house, prevented him from entering the house. The defend-
ant objected to the admission of this testimony and moved
to strike it out, and the second exception is to the refusal
of the Court to strike it out.

F. Kahn, John Lotz and Harry Goldschneider each testi-
fied that sometime in March, 1905, they went with the plain-
tiff to the house to complete the work, and that the defend-
ant's wife was there and would not let them in the house.
Objection was made to the testimony of each of these wit-
nesses and motions were made to strike out the same, which
were refused, and these constitute the fourth, fifth and sixth

exceptions, which, with the second exception, present the same question.

Herman Meyer, the plaintiff's son, testified that he was present on November 7th, 1904, and that there was then only a verbal agreement for the whole work for $911, and that $745 had been paid on account' of that work, and that the defendant had paid other parties $536 for completing work unfinished by the plaintiff.

The defendant testified in his own behalf to the same effect, and further testified that the written contract dated November 7th, 1904, for three closets was written and signed afterwards because the plaintiff said he could not get a permit from the city without it; that he never offered a note for $800, nor accepted the work; that he never told the plaintiff to stop work, and never authorized his wife or any one else to prevent his completing the work.

Hilda Meyer testified that she never prevented plaintiff from completing the work, but she did make some changes in the work, not by any authority from the defendant, but because, as his wife, she felt she had the right to do so.

Kloze, Saltzman and Graham testified to payments made them for work done which Herman Meyer had testified was for completing plaintiff's work, and plaintiff, in rebuttal, testified that the payments made them were not for work included in his contract, but for connecting the three closets upon the order of the city with a sewer which was constructed after he had connected these closets with a well in the yard, which fulfilled his contract as to them.

The second, fourth, fifth and sixth exceptions must depend upon whether the alleged act of the wife in forbidding and preventing the completion of the work can be regarded as the act of the husband upon the principle of implied agency.

It appears from the record that the defendant was residing in Charles county where this suit was originally brought, and that during 1905 and 1906 he was residing, or occupied in some way at La Plata, Charles county, while it appears

that during the same period his wife was in Baltimore in the occupation or possession of this house.

It is true that a wife has no authority to bind her husband as his agent, merely by virtue of the matrimonial contract, but for some purposes her agency may be implied. "The wife has, it seems, in the absence of the husband, a general authority to exercise the usual and ordianry control over the property left in her possession by him, unless the presumption of authority is rebutted by proof that he has constituted some other person his agent for that purpose." 15 *Amer. & Eng. Enc.,* 2nd Edition, page 856.

"Where the husband is absent from home, and some one must carry on the household and small business, the agency of the wife will be implied." *Schouler on Domestic Relations,* sec. 72. "She may be his agent as to his real estate, not only for collecting rents, but in the more important transactions," *idem.* "Acts done by the wife in relation to her husband's property should be promptly disavowed by him if he wishes to escape responsibility." "Presumption of agency is strengthened where the husband is obgliged to be absent much of the time." *Idem.*

In *Church* v. *Landers,* 10 Wend. 79, it was held that a wife, in the absence of her husband, was authorized to hire his horse in her possession, and that trover would not lie by the husband against the hirer to avoid the contract, the Court saying, "The wife, in the absence of her husband must be considered as having a general authority to exercise the usual and ordinary control over his property, which must be possessed by some one, unless it be expressly shown he had constituted some other person his agent for that purpose." In that case there was evidence to the effect that he had directed her not to hire it, but that this was unknown to the hirer.

In *McAfee* v. *Robertson,* 41 Texas, 355, the action was for work and material repairing fences and furnishing new rails for defendant's farm, necessary to its profitable use and occupation, in his absence. The lower Court instructed the jury

that unless the defendant ratified the wife's contract they must find for defendant, but this was held error on appeal.

In *Buford* v. *Speed,* 11 Bush. 338, some question of title as to defendant's farm in the wife's possession, arose in his absence, and the wife employed counsel to defend the title, and he was held bound by her contract.

And in *Benjamin* v. *Benjamin,* 15 Conn. 357, the Court said: "The law will, in some cases, presume the wife to be the agent of the husband when no such presumption would exist as to another person; and also will, in some cases, imply a larger authority to the wife than to an ordinary agent, and this, perhaps, whether the husband be absent from home or not; and that in other cases, where he is absent, a presumption would arise that his wife has authority to act in his behalf, which would not exist if he were at home." It is a reasonable presumption here, if the defendant's wife did forbid the plaintiff to enter the house to complete his work, that she communicated that fact to her husband, but there is no evidence that he disavowed her authority to do so, as we have seen from the text of Mr. Schouler, and upon plain principle, he was bound to do if he wished to escape responsibility therefor.

Under the circumstances of this case we are of opinion that there was no error in the ruling on the 2nd, 4th, 5th and 6th exceptions.

The plaintiff offered four prayers all of which were granted, and the defendant offered seven, of which the 2nd, 3rd and 7th were granted, and the 1st, 4th, 5th and 6th were rejected, to which rulings the 7th exception was taken.

The defendant's 1st prayer asked an instruction that there was no evidence legally sufficient to entitle the plaintiff to recover. His 4th prayer sought to exclude from consideration by the jury the evidence relating to the offer of the $800 note. His 5th prayer sought in like manner to exclude any testimony tending to prove that defendant's wife prevented the completion of plaintiff's work, and his 6th prayer asserted that there was no evidence legally sufficient to establish any

authority from defendant to his wife to interfere with the completion of the work.

It follows from what we have said in relation to the previous exceptions, that all these prayers were properly rejected, and it follows for the same reason that it was error to grant the defendant's 2nd prayer which instructed the jury that there was no evidence legally sufficient to establish any relation of agency between the defendant and his wife. The defendant's 7th prayer in relation to the burden of proof is always proper where there is a conflict of testimony upon any material point, and was therefore properly granted here.

The Court granted four prayers offered by the plaintiff of which the 1st, 2nd and 3rd will be set out by the reporter. The first is the same prayer which was approved by this Court on the former appeal, and is equally correct upon the testimony in this record. The 4th relates only to the allowance of interest in event that the verdict should be for the plaintiff, and needs no comment. The 2nd prayer is so framed as to embrace in addition to the contents of the 2nd prayer in the former appeal, one of the conditions held in the former appeal to be essential to recovery upon the common counts in assumpsit, viz, that all the materials and work done, were actually accepted; and the 3rd prayer is so framed as to embrace, in addition, the alternative condition held on the former appeal to be essential to recovery in this case, viz, that the completion of the work was prevented by the fault of the defendant. With these elements added, these two prayers conform to the views of the Court expressed in the former appeal in discussing the plaintiff's 2nd prayer, and they were properly granted here.

The defendant's third prayer is in apparent conflict with plaintiff's third prayer, in that it asserts there could be no recovery unless the failure to complete the work was due to the fault of the defendant, while the plaintiff's prayer allows a recovery whether such failure was due *either* to the fault of the defendant, *or* of his wife, in possession and control of the house at the time the work was to be done. The

appellant in framing his prayer seems to have relied upon the language of the Court on the former appeal "due to the fault of the defendant," but it will be seen on reference to the record in the former appeal that there was no testimony there as to the wife's interfering to prevent the completion of the work, and that no question was made there as to her agency in the matter; and it can not therefore be supposed that the Court intended to speak of the fault of the husband as embracing the fault of the wife. The defendant's 3rd prayer was directly calculated to mislead the jury, and if their verdict had been for the defendant, it would have been necessary to reverse the judgment thereon because of these conflicting prayers. But as their verdict was for the plaintiff in accordance with the theory of plaintiff's 3rd prayer which we have approved, there is no concurrence of error and injury, and the judgment will therefore be affirmed.

*Judgment affirmed the appellant to pay the costs above and below.*