SOLOMON KALUS, Infant, by His Father and Next
Friend Max Kalus,

*vs.*

NATHAN BASS.

*Landlords*: *injuries to licensees; implied invitation to
visit premises.*

In general, the owner is liable to one who comes upon the
property, by the owner's invitation, and is injured by undis-
closed and hazardous conditions of which the owner was aware,
and against which he did not afford protection.          p. 469

If the owner of property extends an invitation to inspect it
to one who inquires concerning its rental, etc., as a home, the
invitation will be presumed to include members of his fam-
ily; and if a member of his family accompanies him when
he inspects the property, it will be presumed that such member
came in response to such an invitation.          p. 471

And if such a member of the family, while on such visit of
inspection, is injured because of the defective and dangerous
condition of the property, the owner is liable therefor.     p. 473

The owner of certain property extended an invitation to in-
spect certain of the rooms to a party who inquired as to their
rental for a home; when he came to make the inspection he
was accompanied by one of his children; while going upon a
porch which had been held out by the owner as being one of
the advantages of the rooms, the porch, which had for a long
time been in a decayed and rotten condition, fell, and the child
was seriously injured: *Held,* that the child was present by the
implied invitation of the owner of the property, and that for
said injuries the owner of the property was responsible.   p. 473

While offers to pay money by way of a compromise are not
admissible in evidence, the same rule does not apply to the
admission of particular facts, unless made as a mere conces-
sion to indorse a compromise or unless made without prejudice.
pp. 474-475

When a portion of testimony of a competent witness, offered in evidence is admissible, it is error to reject the testimony as a whole. p. 475

*Decided January 15th, 1914.*

Appeal from the Baltimore City Court. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Sidney L. Nyburg* (with whom were *Archibald Sykes* and *Bernhard Cline* on the brief), for the appe'lant.

*Thomas C. Weeks* (with whom was *Edward Rees* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The appellee, Nathan Bass, is the owner of the houses and lots designated as Nos. 825, 827 and 829, situated on the south side of Pratt street, in Baltimore City. No. 829 occupies the southwest corner of Pratt and High streets, and it is adjoined on the west by No. 827, which is adjacent to No. 825. There is a hallway between Nos. 827 and 829, with an entrance from Pratt street, and a stairway in the hall provides access to the second floor rooms of both premises. The ground floors are used for business purposes, a drug store being conducted in No. 829 and a notion store in No. 827. A placard was posted by the appellee on the entrance door advertising "Rooms for Rent." The appellant's father, Max Kalus, having seen this notice in passing, and having learned that Mr. Bass was the proprietor, spoke to him on the street and asked him if the house over the drug store was for rent. Mr. Bass said that it was, and Mr. Kalus then inquired as to the number of rooms and whether there was a place to

hang out washing. To this Mr. Bass replied that there were three or four rooms, and that there was a porch upon which the washing could be dried. He told Mr. Kalus that he could get the key at the drug store. Mr. Kalus asked as to the amount of the rent, but Mr. Bass said: "I will not tell you the price of the rent now; you go first and look at the rooms, and afterwards if the rooms suit you I will tell you the price." In a short while Mr. Kalus went to the drug store, with his twelve year old son, and having received the key, they entered the hallway and went upstairs to examine the rooms offered for rent. They found only two rooms, and no porch, over the drug store, but there was a third room open across the hall with a doorway giving access to a platform in the rear from which there were steps leading up to the only porch in view. As Mr. Kalus and his son were ascending these steps to inspect the porch the stairway fell with them to the ground eighteen feet below and they were both seriously injured. There is evidence in the record that the structure had been unsafe, to the knowledge of Mr. Bass, for a considerable period of time. It was proven that the timbers were very old and decayed and that a former tenant, who had used the porch for drying clothes, moved away because of the dangerous condition of the steps, after notifying Mr. Bass several times that they ought to be repaired. The case, therefore, admits of a finding that Mr. Kalus visited the premises under an express invitation of such a character as to make it natural and probable that he would go upon the porch, to which special reference had been made, and would thus be exposed to a hazard of which Mr. Bass appears to have been informed but of which he gave no warning.

The main question in the present action, which seeks recovery for the injuries sustained by the young son of Mr. Kalus who accompanied his father to the premises, is whether the infant plaintiff was present under such circumstances as to entitle him to the benefit of the general rule that the owner is liable to one who comes upon the property by his invitation, express or implied, and is injured by undisclosed

and hazardous conditions of which the owner was aware and against which he did not use due care to afford protection; *Kann* v. *Meyer,* 88 Md. 541; *Benson* v. *Baltimore Traction Co.,* 77 Md. 535; 29 *Cyc.* 453, and numerous cases there cited.

At the conclusion of the plaintiff's case an instruction was granted withdrawing the issue from the jury on the ground that he had offered no evidence legally sufficient to entitle him to recover, and the question we have just stated is raised by an exception to that ruling.

The theory of the defense is that the invitation to the father did not, either expressly or by implication, include the son, and that in any event it referred only to the rooms over the drug store, No. 829, and did not relate to the room forming part of the house No. 827 or to the porch communicating with it in the rear. As to the latter point it is sufficient to say that while Mr. Kalus inquired in the first instance about the rooms over the drug store, he was told that there were three or four rooms on the second floor for rent, in connection with a porch, and as the open room across the hall was necessary to make up that number, and as the only porch to be found was accessible only from that room, the visit made to that part of the premises was naturally and directly induced by the owner's statement and invitation. The question as to the status of the son is one of interest and importance, and we have not found or had referred to us any decisions which deal with such a situation as the one here disclosed.

In the argument on behalf of the appellee the case of *Benson* v. *Baltimore Traction Co., supra,* was cited as governing in principle the question now being considered, but we find no analogy between that case and the present. The question there was as to the liability of the defendant company for injuries sustained by a student who fell into a vat on the company's premises while making a tour of inspection by permission previously asked and obtained for that purpose. There was no invitation or negligence imputable to the defendant. The vat was a part of its plant and the plain-

tiff a mere licensee. The Court applied the principle stated by CHIEF JUSTICE BIGELOW in *Sweeny* v. *Old Colony and Newport R. Co.,* 10 Allen (92 Mass.) 372, that: "A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident." It was upon the distinct ground that the plaintiff in the *Benson case* was not "in any manner invited or induced," by any act of the defendant company, to visit its premises, but "went there solely for his own personal benefit and pleasure," that he was held not entitled to recover.

In the case at bar an *invitation* was given, and it induced the visit to the particular structure whose collapse caused the injury and of whose insufficiency the proof tends to show that the defendant was aware; and the question here is whether the invitation thus actually extended, to one making inquiry with a view to leasing the premises, impliedly included other members of the applicant's family who might accompany him on the visit of inspection.

There was nothing in the interview between the parties that would suggest to the defendant the idea that Mr. Kalus would be the sole occupant of the rooms if he should become the lessee. The natural inference from his inquiry in reference to a place for hanging out the washing was that he was a man of family and was interested in having that domestic convenience. When the defendant invited him to examine the premises and ascertain whether they suited him, it was to be reasonably anticipated that he would want to consult the taste and judgment of the other members of his household on that subject. As they would be expected to occupy the property together, it would require a very strict construction of the invitation to hold that it was confined absolutely to the applicant himself, and that it could not embrace even by implication those who were interested equally with himself in the question as to whether the rooms would be suitable. Upon this theory the wife, son or daughter of a prospective lessee could not, without an expressly inclusive invitation, go

with the husband or father when he was invited by the owner
to inspect premises offered to be leased for domestic use,
except at the risk of suffering without redress any injury
resulting from hidden defects and dangers which the owner
might negligently permit to exist.

The plaintiff must have been present at the place of the
accident in one of three capacities. He was there either as
a trespasser, or as a licensee, or in pursuance of an invitation,
express or implied. *Benson* v. *Baltimore Traction Co., supra.*
It could not have been as a trespasser that he entered the
premises, because he had at least the permission of the
druggist who admitted both the father and the son into the
property by the delivery of the key as the defendant's agent.
The boy could not be characterized as a mere licensee, be-
cause he was not there solely to promote his own objects, but
partly and primarily on account of the action of the defend-
ant in advertising for tenants. In the *Benson case* it is said,
quoting with approval from *Campbell's Treatise on Neg-
ligence*: "The principle appears to me that invitation is in-
ferred where there is a common interest or mutual advantage,
whilst a license is inferred where the object is the *mere pleas-
ure or benefit* of the person using it." The visit in this case
was made with a view to the particular object in which the
defendant was himself interested. It would not .have been
made at all but for the defendant's desire, as indicated in his
posted placard, that applications should be made for the leas-
ing of the rooms. The interest, therefore, which brought
the plaintiff to the property was one which the owner him-
self had prompted, and was promoting by his own act and
for his own advantage. It is thus evident that the plaintiff
was not in the position of a licensee having no community of
interest or benefit with the owner. The only other capacity
in which he could have been present, under the circumstances,
was that of a visitor by implied invitation.

In 29 *Cyc.* 454, it is said: "An implied invitation creating
the obligation to use reasonable care arises from the conduct
of the parties, and its essence is that the owner knew or ought

to have known that something he was doing or permitting to be done might give rise to a natural belief that he intended that to be done which his conduct had led plaintiff to believe he had intended." Among the illustrations of implied invitation cited in connection with the text quoted are cases of visits from which some benefit is supposed to accrue to the person by whom the invitation is impliedly given, as of customers entering stores or similar places for the purposes of trade or other business with the proprietor, or of "prospective tenants and prospective purchasers, or one accompanying the prospective purchaser who is interested in the purchase." The principle is thus expressed in *Phillips* v. *Library Co.,* 55 N. J. L. 315: "The gist of the liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used." The rule is similarly stated in *Sweeny* v. *Old Colony & Newport R. Co., supra; Turess* v. *New York S. & W. R. Co.,* 61 N. J. L. 314; 4 *Words & Phrases* 3760.

It is a familiar principle that the natural and probable consequences of an act are presumed to have been intended, and there can be no doubt that the conduct of the defendant in the case at bar was the original and efficient cause which induced the plaintiff's visit with his father to the premises in question with a view to their possible occupation by the family as tenants. The principle of implied invitation is sufficiently broad in its reason and policy to include such an inducement, and to entitle the plaintiff, under the circumstances shown by this record, to have the issue as to the facts upon which he relies submitted to the determination of a jury.

The only other question in the case is raised by an exception to the action of the trial Court in striking out on motion, testimony given by Israel Silberstein, one of the plaintiff's witnesses, to the effect that the defendant came to see him sometime after the accident, and that a conversation then occurred, which the witness narrated as follows: "Mr. Bass came in and wanted me to help him out of trouble. I said 'What trouble have you got, Mr. Bass?' He says that parties went to see his rooms and fell down through the steps leading to the porch; leading to a drying porch. I said, 'What was the matter with those stairs?' 'Why,' he said, 'they were old stairways, I suppose they were rotten, and as they stepped out they went down with them.' Mr. Bass told me that he saw the parties in the hospital, Kalus and his son, and they told him that I am their friend, and he thinks that I can do a good deal for him being that I am Kalus' friend. I asked Mr. Bass what does he want me to do. He wanted me to use my influence on Kalus, not to resort to law, as several lawyers were running after him to take the case and sue. And he would rather see that Mr. Kalus gets whatever belongs to him for his injuries without resorting to law and he wanted me to use my influence with Mr. Kalus."

This testimony was all excluded on the theory that it related to a proposal of compromise. The statements attributed to the defendant included admissions in effect that the purpose of the plaintiff's visit with his father was to see the rooms offered for rent and that the accident was due to the unsafe condition of the steps leading to the porch. These were relevant facts which the plaintiff was entitled to prove. The defendant's admissions were proper to be received for that purpose unless they were rendered incompetent by the circumstance that they were made in connection with a proposal to settle the case out of Court. The rule is that offers by way of compromise "to pay or to accept a sum of money, or to make deductions, and in general to secure a settlement" are not admissible. But there is a distinction "between such offers, and the admission of particular facts." The latter

can be proved unless they are made as a mere concession to induce a compromise, or unless they are expressly stated to be made without prejudice. *Biggs* v. *Langhammer,* 103 Md. 102; *Acker, Merrall & Co.* v. *McGaw,* 106 Md. 560; *Meyer* v. *Frenkil,* 116 Md. 415; *Calvert* v. *Friebus,* 48 Md. 46; *Reynolds* v. *Manning,* 15 Md. 526.

In *Biggs* v. *Langhammer, supra,* the Court said that the letter in which the offer of compromise there excluded was submitted contained "no admission of any particular fact, which the defendant, under the exception stated, would be entitled to have received in evidence." In 1 *Am. & Eng. Ency. Law* (2nd Ed.) 716, it is said that "admissions of independent facts are receivable in evidence though made during negotiations for a compromise," and in 16 *Cyc.* 950, that "statements of facts, independent of the concessions involved in an offer of compromise, are competent as admissions, since they are supposed to have been made because of belief in their truth."

The proposal by the defendant in this case that the question of compensation for the injuries sustained on his premises be adjusted amicably was an offer of compromise and was inadmissible, as the disposition of the law is to encourage such adjustments and to permit overtures to that end to be made without prejudice. *Pentz* v. *Penn. Fire Ins. Co.,* 92 Md. 447; *Groff* v. *Hansel,* 33 Md. 170. But the interview in question included the distinct admission of facts to which we have referred, and which were plainly not made as concessions to induce a compromise. These statements were therefore proper to be proven, and as the motion to strike out was directed to the conversation as a whole, it should have been overruled. *Murphy* v. *State,* 120 Md. 236; *Jessup* v. *State,* 117 Md. 119.

*Judgment reversed with costs and new trial awarded.*