# WILLIAM PENROSE *vs.* GEORGE W. PAGE, RECEIVER.

*Contract of Guaranty—Description of Instrument Guaranteed— Variance—Release of Guarantor.*

The mere fact that a contract of guaranty described the note guaranteed as payable to the order of the bank to which the guaranty was given, while the note intended to be guaranteed was payable to the order of a certain individual, by whom it was assigned to the bank, did not affect the liability on the contract of guaranty, the contract clearly identifying the note as one secured by a mortgage given by the makers to such individual, to be assigned to the bank, and the guarantors themselves testifying that the intention was to guarantee the mortgage debt. pp. 20, 21

A contract of guaranty, like other contracts, is to be given such construction as will carry out the intention of the parties. p. 20

One executing a contract guaranteeing to a bank a mortgage note, which was to run for a year, was not released by reason of the giving by one of the makers of the note, for convenience in discounting, of an additional four months note, and the renewal thereof, neither the contract of the makers of the note guaranteed, nor the obligation of the guarantors, being in any way changed thereby. p. 21

An agreement by counsel providing that if a certain claim for services, in controversy in a certain equity suit, should be allowed by the court below, the claimant should have the benefit thereof under his plea of set-off in a pending action at law between the same parties, *held* that the appellate court having decided in the equity suit that he was entitled to an allowance for services on proof of the value thereof, a judgment against him in the action at law should not be affirmed, although there was no reversible error in the rulings, but the judgment should be reversed and the case remanded, in order that he might have

the benefit of the allowance for services in the judgment to be entered.                                              pp. 21-22

*Decided February 1st, 1924.*

Appeal from Baltimore City Court (CARROLL T. BOND, J.).

Action by George W. Page, Receiver of the Lafayette Bank, against H. Walter Ganster, Jr., and William Penrose. From a judgment for plaintiff, defendant Penrose appeals. Reversed.

The cause was argued, together with that next preceding, before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Edwin T. Dickerson* and *Lindsay C. Spencer,* for the appellant.

*Samuel J. Fisher,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In this case the appellant and H. Walter Ganster, Jr., were sued by the receiver of the Lafayette Bank in the Baltimore City Court on the following guaranty:

"Baltimore, Md., February 19th, 1921.

"For value received, and at the request of Karl M. Bubert and Nina K. Bubert, his wife, we, the undersigned, H. Walter Ganster, Jr., and William Penrose, hereby guarantee the payment of principal of note of Karl M. Bubert and Nina K. Bubert, his wife, dated February 19th, 1921, and payable to the order of the Lafayette Bank, one year after date, and secured by mortgage on property Nos. 104 and 106 South Charles Street, to William T. Haydon, which mortgage is to be assigned to the said Lafayette Bank, as collateral security therefor, and the liability of the undersigned shall not become due and payable until default in said mortgage, and sale and payment under foreclosure proceedings.

"H. Walter Ganster, Jr.,
"William Penrose.

"Witness:  Charles Mulligan."

The defendant, H. Walter Ganster, Jr., pleaded "never was indebted" and "did not promise as alleged," and in addition to those pleas the defendant, William Penrose, filed under a plea of set-off the following claim against the bank:

"Baltimore, Maryland, February 26th, 1923.
The Lafayette Bank,

                           To William Penrose, Dr.

| | |
|---|---:|
| To professional services rendered during the months of October, November and December, 1921, as special counsel of said bank .............................. | $5,000.00 |
| To Commission on $300,000 secured as a loan for said bank.................... | 15,000.00 |
| | $20,000.00" |

The plaintiff joined issue on the first and second pleas and demurred to the plea of set-off, and the court below sustained the demurrer, but the case was submitted to the court, without a jury, upon the following stipulations of counsel and the evidence hereinafter referred to:

"Stipulation.

"It is agreed that the claim of the plaintiff as against the defendant, Penrose, as set forth in the plaintiff's declaration in this case shall be heard without the aid of a jury, and the said Penrose does hereby waive his right to a jury trial.

"It is further agreed that the case shall be heard on its merits without regard to the form of the pleadings and all errors in the pleadings are hereby waived.

"It is further agreed that the annexed signed copy of the stipulation filed in the case of State of Maryland vs. Lafayette Bank is a part of this stipulation and that this court shall give effect to it in entering any judgment against the said Penrose.

"Stipulation.

"It is agreed that the claim of William Penrose, herein filed, and the answer of the receiver thereto, shall be heard before Honorable Carroll T. Bond, with

the right to either party to produce testimony in support of their respective contentions.

"It is further agreed that if any part of such claim is allowed by the court it shall, at the option of the said Penrose, be allowed as a set off against and deducted from any sum found to be due by the said Penrose either individually or jointly with any other person to the said George W. Page, receiver of the Lafayette Bank, in his case against the said Penrose and others in the Baltimore City Court, and it is agreed that a copy of this stipulation shall be filed in said case in said Baltimore City Court.

"It is further agreed that the above claim shall be heard on its merits without regard to the form of the pleadings and that all errors in the pleadings are hereby waived."

At the trial the plaintiff offered in evidence the above guaranty and the following promissory note, marked "mortgage note," and endorsements:

"No......... Baltimore Md., Feb. 19th, 1921.

$27,000.00 secured by mortgage of even date herewith. One year after date we jointly and severally promise to pay to the order of William T. Haydon twenty-seven thousand..................dollars, with interest thereon at the rate of six per cent. per annum, payable semi-annually.

Value received.

Karl M. Dubert,<br>Nina K. Bubert."

Endorsed.

"Without recourse,

William T. Haydon,<br>Lafayette Bank,<br>J. Shorb Neale,<br>President."

The plaintiff also offered in evidence the mortgage of 104 and 106 South Charles street, to William T. Haydon, dated February 19th, 1921, which was, on the same day, assigned

by Mr. Haydon to the Lafayette Bank, and which contains
the following recital:

> "Whereas the said Karl M. Bubert and Nina K.
> Bubert, his wife, are justly indebted unto the said
> William T. Haydon in the full sum of twenty-seven
> thousand ($27,000) dollars, being part of the purchase
> money of the hereinafter described property, for which
> principal sum they have executed and delivered to the
> said William T. Haydon their joint and several promis-
> sory note, of even date herewith, payable to the order
> of the said William T. Haydon, in one year after date,
> with interest thereon at the rate of six per cent. per
> annum, payable semi-annually; and to better secure
> the payment of the aforesaid principal sum and all
> installments of interest thereon, when and as each of
> them shall respectively become due and payable, these
> presents are executed."

The evidence shows that the mortgage was foreclosed by
the receiver of the bank and the property was sold for
$18,000, and that, after applying the net proceeds of sale to
the mortgage debt, it left a balance due on the mortgage of
$13,265.84, which, by an adjustment made by counsel for
the receiver and counsel for Bubert, was reduced to $11,521.
It further appears from the evidence in the case that Wil-
liam T. Haydon was counsel for the bank; that the entire
transaction of the loan by the bank and the guaranty was
put through on the 19th of February, 1921, and that the
bank, for convenience in discounting, also took a note, signed
by Karl M. Bubert alone, for the full amount of the mort-
gage note, payable in four months, and successive renewals
thereof covering the year for which the mortgage note was
given, but that nothing was ever paid on said note or the
renewals thereof; that the loan was procured by Mr. Ganster
from the bank to enable Bubert to take up a mortgage which
Mr. Ganster had secured for him from the Maryland Title
Company, and the appellant admitted that when he was
asked about the loan in the *Montrose* case he said: "All I

can say about that is, that was a mortgage that Mr. Ganster had secured for one of his clients from the Maryland Title Company, and he had asked me, as a personal favor to him, to guarantee that mortgage, and subsequently applied to the Lafayette Bank to take that mortgage up. And he asked me to continue my guarantee. * * * I knew nothing about it until he came to me and said that the mortgage would be transferred from the Maryland Title Company, I think, to the Lafayette Bank, and would I continue the guarantee to accommodate him. * * * I thought it was safe, and Mr. Ganster accommodated me a number of times and I was glad to return the favor." He also testified in this case that he did not know that the bank had taken a four months note from Karl M. Bubert. Mr. Ganster testified that "he was familiar with the guaranty and signed it and was familiar with what it guaranteed; that he put through the transaction with the bank; * * * that the mortgage note was for a year from Karl M. Bubert and wife to William T. Haydon; that he judges there was never any note issued that corresponded with the guaranty," and "that Mr. Penrose gave the guaranty because" he "asked him to do so." Counsel for Mr. Ganster stated in open court that "when he looked at the note and the guaranty he saw they did not correspond; * * * and whereas the note in suit did not exactly agree with the note mentioned in the guaranty, yet inasmuch as it practically covered the same transaction and it was all agreed with the guarantors, he did not see that there was any use going on with the cross-examination," but said "that he was speaking, of course, only as far as Mr. Ganster was concerned."

At the conclusion of the evidence the defendant, Mr. Penrose, prayed the court "to rule as matter of law that the plaintiff had offered no evidence legally sufficient to entitle him to recover, and that the verdict of the court, sitting as a jury," should "be for said defendant." The rejection of this prayer is the subject of said defendant's third exception, and the judgment being in favor of the plaintiff for $11,520

against both defendants, Mr. Penrose has brought this appeal.

The note sued on is payable to the order of William T. Haydon, whereas the note described in the guaranty of the defendants is "payable to the order of the Lafayette Bank," and the main ground of this appeal is that the variance pointed out is fatal. The appellant relies upon the statement in *Brantly on Contracts* (2nd Ed.), pp. 280 and 281, that "the liability of guarantors and sureties is never extended by implication. It is generally said that a surety has a right to stand upon the letter of his obligation, and is liable for nothing unless it is nominated in the bond," and cases like *First Nat. Bank* v. *Gerke,* 68 Md. 449, and *Schaeffer* v. *Bond,* 72 Md. 501, in the former of which it is said: "It is one of the well-established principles of law that the obligation of a surety is not to be extended beyond what the terms of the contract fairly import. A surety has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, such variation operates a release of the surety." But it is also the well-established rule that contracts of the kind must be given such a construction as will carry out the intention of the parties. In the case of *Hooper* v. *Hooper,* 81 Md. 155, JUDGE MCSHERRY said: "A guaranty is a mercantile instrument to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict or technical accuracy, but in furtherance of its spirit and liberally to promote the use and convenience of commercial intercourse. It should be given that effect which will best accord with the intention of the parties as manifested by the terms of the guaranty, taken in connection with the subject matter to which it relates, and neither enlarging the words beyond their natural import in favor of the creditor, nor restricting them in aid of the surety. The circumstances accompanying the whole transaction may be looked to in ascertaining the understanding of the parties." See also *Saunders Co.* v. *Ducker,* 116 Md. 479. Applying the cases referred to

to the facts of this case, there would seem to be no doubt as to the intention of the guarantors, and no rule of law to prevent a court from giving effect to that intention. The contract itself describes the note intended to be guaranteed as the note of the mortgagors, dated February 19th, 1921, and secured by the mortgage to William T. Haydon, which was to be assigned to the bank, and the testimony of the appellant and Mr. Ganster, the guarantors, is to the effect that what they intended to guarantee was the payment of that mortgage debt.

It is also urged on behalf of the appellant that the taking of the four months' note from Karl M. Bubert alone released the appellant. But the bank did not surrender the mortgage note, extend the time of payment, or in any way change the contract of the makers thereof, nor did the taking of the four months' note and the renewals thereof in any way vary or change the obligation or contract of the guarantors.

The first exception in the case is to the refusal of the court below "to strike from the record the promissory note filed with the declaration" on the ground that it was not the note described in the warranty, and is disposed of by what we have said in regard to the third exception. The second exception was to the refusal of the court below to permit Mr. Ganster to state whether Mr. Penrose knew of the taking of the four months' note. Even if there was error in this ruling the appellant was not injured thereby, for Mr. Ganster later testified without objection that the appellant "never knew that the four months' note was taken."

It follows from what has been said that there is no reversible error in any of the rulings of the court below, and the judgment would be affirmed but for the stipulation of counsel to which we have referred. This case and No. 100 Appeals of this term were practically disposed of by the court below on the same day, and the agreement of counsel filed in this case provided that if the appellant's claim against the bank in No. 100 Appeals of this term was allowed by the court below he should have the benefit of it under his plea of set off in this case. As we have held in No. 100 Appeals that

the appellant is entitled to be allowed for his services to the bank between the date of his employment and the 25th of November, 1921, upon satisfactory proof of their value, we think that under the agreement mentioned the judgment in this case should be reversed and the case remanded in order that the appellant may get the benefit of the allowance for such services in the judgment to be entered in this case.

> *Judgment reversed and case remanded, the costs in this Court and in the court below to abide the judgment to be entered in this case.*