UNION TRUST CO. *v.* RESISTO MANUFACTURING COMPANY ET AL.

[No. 38, October Term, 1935.]

*Decided December 5th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Walter H. Buck* and *R. Contee Rose,* for the appellant.

*Vernon Cook,* with whom was *Malcolm H. Lauchheimer* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

The Union Trust Company of Maryland, a corporation, appellant herein, filed a bill of complaint in the Circuit Court of Baltimore City against the Resisto Manufacturing Company, a corporation, and Louis Kahn, and Joseph Silberman, individually and as copartners trading as Resisto Manufacturing Company. This appeal is taken from a decree in that case of April 11th, 1935, dismissing the bill of complaint, whereupon the Union Trust Company appealed.

It is conceded that the principal question presented here is whether the Union Trust Company was a creditor of Louis Kahn and Joseph Silberman, as copartners, trading as Resisto Manufacturing Company, with respect to a

loan made by it. This question is fundamental, and upon its solution rests the decision in this case. It is claimed by the individual appellees that the credit was not given and the loan was not made to the partnership, but was made to them individually, and they offer as evidence in support of their contention the mortgage securing the loan in question, dated April 5th, 1929, by Louis Kahn and wife and Joseph Silberman, as individuals, wherein it is recited that they "are justly indebted unto the said mortgagee for the full and just sum of Thirty-five Thousand Dollars." The case presents an issue in fact. It is true that the form of that transaction would indicate that the contentions of these appellees should prevail, but in cases of this character, where fraud is charged, and where it is alleged that a plan to avoid contractual obligations has been illegally made, by conveyance of property and shifting of the legal positions of the parties, in order to accomplish fraudulent designs, it is the substance and not the form that should control and prevail in determining the rights of the parties in interest. Equity deals with substance, rather than with form.

In the bill of complaint it is charged that, in the month of March, 1929, the defendants Kahn and Silberman were copartners, trading as Resisto Manufacturing Company, and that, as such, they applied to the appellant for an unsecured loan in the amount of $35,000, and furnished a statement of the partnership's financial affairs, including assets and liabilities, and in that statement there was included and listed as an asset of the partnership a valuable property known as 100 Hopkins Place of Baltimore City, subject to a first mortgage in the amount of $75,000, held by the Johns Hopkins University. It is alleged that this property was acquired by the partnership at or about the time of the formation thereof, and that the partnership owned and occupied a large part thereof in conducting the partnership business, which consisted of the manufacture and sale of articles of merchandise. The property was held in the name of Kahn and Silberman, as tenants in common. That the said loan was made to and

the proceeds thereof received by the said copartnership and used and applied by it in the operation of its business, and from time to time there were payments on account made by the partnership, which substantially reduced the indebtedness, and that in the latter part of April, 1934, a financial statement of the partnership was procured, and then the Union Trust Company first discovered that, on April 28th, 1933, the said partnership had caused to be formed the Resisto Manufacturing Company, a corporation under the laws of the State of Maryland. It will be observed that this corporation bore the same name as the partnership. The defendant Louis Kahn was president and secretary, and the defendant Joseph Silberman was vice president and treasurer, and these parties, together with Benjamin Kahn, aged twenty-three, son of Louis Kahn, constituted the board of directors, and Kahn and Silberman acquired all the stock in the corporation. The partnership conveyed and transferred to this corporation all the partnership property and assets, but did not convey to it the property 100 Hopkins Place.

The Union Trust Company did not have notice of this transfer until long after it had been made. In the financial statements from time to time rendered, the loan of $35,000 was carried as an obligation of the partnership, and this continued until about the time of the formation of the said corporation. Upon the discovery of this action by the partnership, the Union Trust Company demanded a full statement of assets and liabilities of said corporation, and found that it had been excluded as a creditor of said corporation, notwithstanding the transfer of all the said property to it. The Union Trust Company then demanded that it be treated by the corporation just as other creditors of the partnership had been. This demand was refused. It was also shown that the Callow Avenue property, listed as an asset of the partnership, was not transferred to the corporation, but a mortgage thereon was given by Louis Kahn (in whose name the title stood) to one Sam Lipsitz for $3,000, and it is charged that by

reason of such transfers and mortgages the individual defendants became and were hoplessly insolvent.

It is charged that these transactions were fraudulent and were made for the purpose of hindering and delaying the creditors; that the depreciation of the value of 100 Hopkins Place was such as to afford no protection to the Union Trust Company; and that all of these things were done deliberately, willfully, and fraudulently by the defendants Louis Kahn and Joseph Silberman; all of which allegations of fraud are denied, and the conduct of the defendants is attempted to be justified by the contention that the loan was never made to the partnership, but was made to Kahn and Silberman as individuals, and that, this being true, whatever claim the Union Trust Company has is against these individuals and not against the partnership or partnership property, or against the corporation so formed, which took over the assets of said copartnership under the above recited conditions.

There is testimony in the case tending to support the allegations of fact in the bill. It is shown that the loan was desired for partnership purposes and to better finance the operations of the manufacturing and mercantile business of the Resisto Manufacturing Company, a partnership. This is evidenced by the conduct of the parties, their representations, the examination by a representative of the Union Trust Company of the partnership books and affairs, the rendering of statements by and in the name of the Resisto Manufacturing Company, all of which was done for the purpose of establishing a credit basis for the loan to the Resisto Manufacturing Company. The representations made by the parties, the negotiations both with the partners direct and with their counsel, Mr. Sylvan Hayes Lauchheimer, clearly show for whom and the purposes for which this loan was being negotiated.

Comprehensive statements in writing also show this. The result of the examination of the accounts, assets, and liabilities, and the business, which was to form a credit basis for the loan, and the refusal of the Union Trust Company to extend a credit of $35,000, demonstrate that

it was a partnership transaction. Included in the statement, both to the Union Trust Company and to the Baltimore Trust Company, was the property 100 Hopkins Place, set down as an asset of the partnership. The great weight of testimony is that this property, 100 Hopkins Place, was regarded as partnership property and was so represented to be; consequently the suggestion was made that it be pledged as security for the loan, which was done, but the giving of this mortgage in no way destroys, but under the testimony rather strengthens, the contention that it was a partnership loan, and that partnership property, or at least property of the partners, was pledged as security. From all the evidence in the case there can be no doubt that Mr. Sylvan Hayes Lauchheimer regarded this loan as a partnership matter from its inception, and his correspondence and his participation generally clearly show this. The above facts have to do with matters prior to the loan.

Events subsequent to the creation of the loan also support the contention of the appellant. The business was very considerable, and necessitated, for the operation of a manufacturing business and the selling and distribution of its products, an accurate and comprehensive system of bookkeeping, and for that purpose at least one bookkeeper was employed. The effort to obtain access to these books and accounts generally was futile. The pressing inquiry and demand of counsel and the interest and intercession of the court did not accomplish this. There was a ledger and a rent book produced from which little could be gleaned as to the nature and character of this business. A casual reading of the record shows that both of these partners were rather apt at evasions. If the books had not been adverse to their contentions, they would doubtless have been produced, and the same can be said of the income statements, which were called for by the appellant, but which were not forthcoming. The incorporation of the business and the taking over of all the assets of the partnership, and the issuance of all the stock to Kahn and Silberman, and the introduction of

young Kahn as a third director, under the circumstances could be for but one purpose, and that was to exclude the Union Trust Company from any claim it might have upon the general assets of the partnership, and leave it entirely to make its recovery out of the depreciated real property covered by the mortgage, in which there was no equity available to satisfy the claim.

The Union Trust Company knew nothing of this plan until long after it had been consummated. After the loan had been made, $10,000 of it was retained for the Union Trust Company as a guarantee fund. $25,000 was paid through the Title Guarantee & Trust Company to Joseph Silberman and Louis Kahn. The indorsement on this check, "Joseph Silberman, Louis Kahn, for deposit only to the credit of the Resisto Manufacturing Company," shows conclusively where this money ultimately went. Explanations were attempted as to why this was done and why the money found its way into the account of the Resisto Manufacturing Company, but the failure to produce books, accounts, and records that probably would have thrown further light upon how the money was received and used is more than a suspicious circumstance. Silberman and Kahn may have loaned this money as individuals to themselves as partners, but in view of all the other facts and circumstances shown in this case such an explanation cannot be accepted.

In October, 1934, after the corporation was organized and the assets of the partnership had been turned over to it, as above stated, there was a meeting, at which were present Mr. Winchester and Mr. Walter H. Buck, attorney, representing the Union Trust Company, and Mr. Silberman, Mr. Kahn, and Mr. Sylvan Hayes Lauchheimer, their attorney. It is contended that this meeting was not held for the purpose of effecting a compromise, but to devise some means by which the claim of the Union Trust Company could be placed in a position where it could be asserted against the partnership assets and against the corporation, and at the same time not injure the credit of the corporation, and at that time it was ad-

mitted by all parties that the moneys due to the Union Trust Company was a debt of the partnership.

According to the statements of Messrs. Lauchheimer and Buck, and the testimony of Mr. Winchester, this was accepted as an independent fact without dispute or question, and was the basis of an effort to establish the position of the Union Trust Company as a creditor of the corporation. On this accepted basis an effort was being made to take care of this claim with that fact as a basis. For this reason, the result of the conference and agreement of all the parties was offered in evidence. The court below ruled this evidence out on the ground that it pertained to a compromise, but the court erred in this. If the agreement was entered into by all parties, understood by all parties, and complete in itself, it has been held that such a complete agreement may be offered in evidence, even though it is the result of a compromise. "It is usually considered that the rule excluding evidence of offers of compromise does not apply to a completed agreement for a compromise, but such agreement may be shown when it is afterward repudiated by one of the parties, unless it is for some reason voided." 22 *Corpus Juris,* 317.

It is true that the agreement, when reduced to writing by Mr. Buck, and which evidently met with the approval of Mr. Lauchheimer, was presented to Kahn and Silberman, and they refused to sign it. Mr. Sylvan Hayes Lauchheimer had been their counsel at this meeting. The action of Mr. Buck met with his approval. The conduct of Kahn and Silberman met with his "stern disapproval," according to his letter to Mr. Buck of November 20th, 1934. A statement of this kind from a man of the high character and professional standing of Mr. Lauchheimer deserves thoughtful consideration. It has force and carries conviction. We think there can be no doubt about the admission at that conference that this was a partnership debt and, as such, was the unquestioned basis for the working out of the difficulties that had arisen, and evidence of that independent fact under the circumstances

in this case should have been admitted. *Pentz v. Pennsylvania Ins. Co.* 92 Md. 444, 48 A. 139; *Biggs & Co. v. Langhammer,* 103 Md. 94, 63 A. 198; *Wagman v. Ziskind,* 234 Mass. 509, 125 N. E. 633; *Tillinghast v. Lamp,* 168 Md. 34, 176 A. 629.

In *Calvert v. Friebus,* 48 Md. 44, Judge Alvey states the rule to be: "If the admission of the existence of a fact be made, unless expressly without prejudice, or as a mere concession in order to induce a compromise, there is no rule of law which would exclude such admission as against the party making it."

In the recent case of *Brown v. Hebb,* 167 Md. 535, 548, 175 A. 602, 608, this court, speaking through Judge Offutt, has clearly stated the rule relating to the admissibility of evidence of this character: "It has long been the law in this state that an offer of compromise is not admissible in evidence as an admission that a debt is due and owing. *Kalus v. Bass,* 122 Md. 467, 89 A. 731; *Meyer v. Frenkil,* 116 Md. 411, 82 A. 208; *Biggs & Co. v. Langhammer,* 103 Md. 94, 63 A. 198; 22 *C. J.* 308; *Jones on Evidence,* sec. 291. But while under that rule the mere fact that an offer of compromise has been made is not admissible to prove that the defendant admitted liability, nevertheless, admissions of particular facts independent of the offer may be received as evidence tending to establish such facts, even though the admissions may have accompanied the offer of compromise, unless they are so integrated therewith as to be inseparable from it or unless it appears that they were made as a concession to induce a compromise, or are stated to be made without prejudice. *Jones on Evidence,* sec. 291; 22 *C. J.* 314; *Kalus v. Bass, supra; Biggs & Co. v. Langhammer, supra; Meyer v. Frenkil, supra.*"

It is our opinion that the appellant, by decided preponderance of testimony, has established the essential elements in the bill, and has shown beyond question that the loan was a partnership transaction, and that the debt created thereby was a partnership obligation, and under all the circumstances, the Resisto Manufacturing Company

(the partnership), in conveying its assets to the Resisto Manufacturing Company (the corporation), and in attempting to exclude the Union Trust Company from any and all of its rights against the assets of the copartnership, acted wrongfully. Therefore, the decree from which this appeal is taken must be reversed, and the case remanded for the passage of a decree in accordance with the views expressed herein.

*Decree reversed, and cause remanded in order that a decree may be passed in accordance with this opinion, costs to be paid by the appellees.*