T. T. DUGGER, Appellee, v. C. C. KELLY, Appellant.

**APPEAL AND ERROR:** Province of Jury—Findings of Facts.
1  The special province of the jury is to pass on irreconcilable conflicts in testimony, the credibility of witnesses and the weight of their testimony.

**CONTRACTS:** "Certainty"—Test to Determine.  "That is 'certain' which is capable of being made certain."
2

PRINCIPLE APPLIED:  Plaintiff and defendant owned adjoining farms, inadequately drained by a joint system of tiling, the farm of plaintiff being the lower.  They agreed that plaintiff should himself construct a new line of tiling on his own land in connection with the joint system, and for the mutual benefit of both tracts, defendant saying: "I will pay my part." *Held,* there was no fatal uncertainty in the contract, the portion for each to pay being determinable by a comparison of

the benefits derived by the two farms from the improvement so made.

CONTRACTS: Consideration—Failure of—What Is Not. An agreement of one landowner to contribute to the cost of a drainage improvement wholly on adjoining and lower land is supported by a sufficient consideration in the benefits shown to be derived by both tracts from more efficient drainage.

STATUTE OF FRAUD: Transfer of Interest in Lands—What Is Not. An oral agreement between two adjoining landowners to enlarge the outlet to a joint system of drainage already existing on their lands is not a contract for the transfer of interest in lands within the meaning of the statute of frauds. If conceded to be within the statute, the performance by one party in the instant case renders the agreement enforceable.

CONTRACTS: Arbitration—Refusal—Resort to Courts. An agreement to arbitrate the amount due under a contract does not close the door of the courts to a hearing thereon, in case one of the parties refuses to carry out the said agreement.

PLEADINGS: Erroneous Prayer—Effect. A prayer based on an erroneous measure of damages will not prevent recovery on the correct measure.

CONTRACT: "Certainty"—Measure of Damages for Breach—Non-stipulation. A contract may, in some cases, stipulate for a measure of damages for breach. There is no fatal uncertainty if it does not. The law will supply the proper measure.

WITNESSES: Impeachment—Statements Out of Court—Form of Impeaching Question. In impeaching a witness by showing the making of statements out of court inconsistent with his statements in court, the impeaching evidence should be confined substantially to the matters denied by the witness in court.

PRINCIPLE APPLIED: A witness for plaintiff denied having said "that plaintiff had told him to stop up certain tiling." The impeaching evidence sought to show that the witness had said, "that plaintiff had hired him to block the tiling." *Held*, properly excluded.

WITNESSES: Cross-Examination—Discretion of Court. Quite large discretion is lodged in the trial court as to the range of cross-examination.

PRINCIPLE APPLIED: Court sustained in ruling out questions seeking to show that witness had stated on a certain occasion that he had been ''damned well paid'' for his former testimony, nothing being shown as to what his former testimony was, the question, however, being generally condemned as an attempt to cast odium on plaintiff by indirection.

**EVIDENCE:** Offers of Compromise—Acceptance of Compromise—Distinction Between. Offers of compromise are not admissible in support of a contested claim or defense, but evidence that a compromise had been actually agreed on and afterwards repudiated may be received.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, DECEMBER 19, 1914.

ACTION at law upon an alleged contract whereby defendant undertook to pay part of the expense of constructing an outlet for drainage of land. The material facts are stated in the petition. There was a verdict and judgment for plaintiff and defendant appeals.—*Affirmed.*

*Frank Farrell, Kenyon, Kelleher & O'Conner,* and *Files & Maher,* for appellant.

*Healy, Burnquist & Thomas,* for appellee.

WEAVER, J.—Plaintiff and wife own the south half of the south half of a certain section of land in Webster county and defendant owns the north half of the same half-section. Prior to the time of the alleged contract in suit the two tracts of land had been to some extent drained by a joint or common system of tiling which had been constructed by the mutual agreement and at the mutual expense of the owners who were grantors of the parties to this suit. In this system were about 2,500 rods of drain of which 1,000 rods were upon the north tract and 1,500 rods on the south tract. The entire drainage was discharged through an outlet of large tile extending from or near the line between the two tracts southwesterly upon

the land now owned by plaintiff ending in an open waterway near the south line of the section. After the present parties came into the ownership of the land the plaintiff suggested to defendant that the tiling as it then stood did not effectually drain the land intended to be served thereby, and he proposed the making of a new or additional outlet by which the system would better serve its purpose. This talk, he alleges, terminated in an agreement or oral contract between himself and defendant whereby plaintiff was to proceed and construct an additional outlet of twelve-inch tile carried along the same general direction as the original outlet and upon completion thereof defendant would pay plaintiff his proper share or proportion of the expense so incurred. He further says that relying upon this agreement he did proceed to construct and complete said new outlet for the common drainage system at the reasonable and necessary expense for labor and material of $530, and that the reasonable and fair share of such expense chargeable to the defendant is one-third of said sum or $176.66, which sum the defendant refuses to pay. Plaintiff also alleges it to have been a part of the contract with defendant that in case they could not agree upon the share which defendant should pay the question should be submitted to arbitrators, but that defendant now refuses to carry out or perform said stipulation. In answer to the claim thus stated defendant denies that he ever entered into any such agreement, or ever promised to pay any part of the cost or expense of said outlet and alleges that the work done by plaintiff was wholly upon his own premises and without any co-operation with or promise or undertaking by the defendant. He further pleads that long prior to the construction of said new outlet his land had been properly drained and was in no manner benefited by the additional outlet. He further says that the agreement pleaded by plaintiff is incomplete and is too indefinite and uncertain to evidence any obligation on his part. For a further answer he avers that after the work had been done by plaintiff and defendant had refused to contribute to the

expense incurred, plaintiff so obstructed and changed said outlet as to prevent any benefit therefrom to defendant's land and thereby waived any right to demand contribution from defendant. Further and by way of counterclaim defendant alleges that in the construction of the new outlet plaintiff disturbed and injured the old one in such manner as to materially interfere with the drainage through the old tile and decrease its efficiency, to defendant's damage. In reply the plaintiff denies all the affirmative matter pleaded in the answer.

Upon the issues thus joined there was trial to a jury and verdict for plaintiff for $146.35. Motion for new trial was overruled and from the judgment entered on the verdict defendant appeals.

I. Is the evidence as shown by the record sufficient to

1. APPEAL AND ERROR: province of jury: findings of facts.

sustain a finding that defendant ever promised or agreed to pay any part of the cost of the outlet?

The negative of this question is very vigorously asserted by counsel for appellant but the position is not well grounded. The plaintiff as a witness on the trial swears quite positively and definitely that the old outlet did not sufficiently discharge the surface waters from the land covered by the joint system of tiling and that a portion of his land and of the land of defendant was thereby flooded at times. He further swears that he and defendant discussed the matter of putting in a new outlet and plaintiff mentioned to defendant the fact that one Stewart who had constructed the original system could be procured to put in an additional outlet provided he could have the job at once, and to this he says defendant responded, "If you will go ahead and put in that ditch and haul the tile I will pay my part and if we can't agree you can pick a man and I will pick a man and let them settle it." To this proposition plaintiff replied, "All right, that is good enough for me." It is upon the strength of this agreement plaintiff claims to have done the work and incurred the expense. He further swears that the place or point from which the outlet should

start on the north and its general course with reference to the original outlet was a matter of agreement between them. With respect to the alleged agreement plaintiff's story is corroborated in a material way by one or two other witnesses. It is true the defendant positively denies the conversation and agreement testified to by plaintiff and that with respect to some of the material circumstances in the case he also has corroboration, but when all is said upon the point here under discussion appellant is met by the insurmountable objection that the making of such agreement is the subject of irreconcilable conflict in the testimony and the credibility of the witnesses and the weight of their testimony are matters for the jury to decide. The verdict indicates that upon this issue the finding was against the defendant and we cannot disturb it. The further consideration of the appeal must therefore proceed upon the theory that the alleged agreement was made as stated by the plaintiff.

II. Counsel for appellant next argue that even if the plaintiff is to be believed and his statement of the alleged agreement is accepted as true yet its terms are so vague and indefinite as to indicate no meeting of the minds of the parties upon the terms and conditions on which defendant assumed any obligation for the expense of the outlet, and there was consequently no contract which the law will recognize or enforce.

2. CONTRACTS: "certainty": test to determine.

That an alleged or attempted agreement may be void and unenforcible because of lack of definiteness and certainty will be readily admitted but this rule is to be applied with due regard to that other elementary principle of the law of contracts, *certum est quod certum reddi potest,* or, "that is certain which can be made certain." The courts are daily enforcing contracts which require proof to make some of their obligations sufficiently certain to support a recovery. If A says to B, "Come, reap my field of wheat and I'll pay you what is right" and B thereupon does the required work counsel would not for a moment contend there is in such transaction no enforcible

contract or that it would not be competent for B to prove and recover from A the reasonable value of the service so performed. So too, if A and B own adjoining farms which may be advantageously drained by a joint or common system or plan of tiling, discharging through a common outlet, and upon discussing the subject A says to B, "You go on and construct the entire system and when the work is completed I will pay my fair or reasonable share of the expense so incurred," it appears just as clear as in the first mentioned illustration that if B acts upon the proposition so made and puts in the contemplated drainage he will be allowed to recover what the evidence may show to be A's fair and reasonable proportion of the cost. Such share may be somewhat more difficult of exact ascertainment than in the simple case first mentioned but its determination to a reasonable degree of certainty is by no means impossible. Indeed the whole system of compulsory drainage in this state is based upon the theory that comparative benefits to be derived by the several tracts of land served by any given system or plan of ditching may be approximately determined, and there is no apparent reason why the same may not be established just as certainly between two or more neighbors who join in a voluntary undertaking to drain their respective premises. If this be true upon what theory shall plaintiff be denied a recovery in this case if the alleged agreement be established and he has performed the contemplated work? The fact that in agreeing to pay "his part" of the expense defendant did not specify or agree upon the fraction or share for which he was to become responsible does not avoid the effect of the agreement as a valid contract. The clear implication of such an agreement was that he would pay his fair and reasonable proportion of the cost and it follows, we think, of necessity, that the measure of recovery under such contract is to be found by a comparison of the benefits derived by the two farms from the improvement so made. The fact that the outlet was wholly upon the farm of plaintiff does not render the agreement any less obligatory

though it is a material fact to be considered in ascertaining the comparative benefits derived by the several tracts. We are clear that there is no fatal uncertainty in the terms of the alleged contract preventing its enforcement by the courts.

We have no quarrel whatever with the many cases cited upon this point by appellant for in our judgment they are in no wise inconsistent with our conclusion.

Whether defendant's farm was in fact materially benefited by the additional outlet is a question of fact on which the witnesses are not agreed and this question also was properly submitted to the jury.

III. It is further argued that defendant's land received no benefit because the new outlet does not extend quite to

3. CONTRACTS: consideration: failure of: what is not.

the partition line between the farms and defendant will have no right to invade plaintiff's land to make a connection therewith.

What may be their respective rights in this respect and whether plaintiff by enforcing the contract estops himself from denying defendant the right to make such connection we do not attempt to decide. As we understand the record there is such connection of the new outlet with the old system of tiling as to relieve the old outlet to a material extent and afford a more rapid and efficient removal of the surface water from both farms. This we think affords sufficient consideration for the alleged agreement and if it be thought to come within the statute of frauds the performance thereof by one party renders it enforcible against the other.

It may further be said these parties or their grantors had already entered into a joint undertaking for the mutual improvement of their lands and a common or joint system

4. STATUTE OF FRAUD: transfer in interest in lands: what is not.

had been constructed by which both tracts were drained through a common outlet. A subsequent agreement to improve the efficiency of such common or joint system by an enlarged or additional outlet would not be open to the objection that it was in effect a transfer of interest in lands within the

statute of frauds. Such transfer as far as any was required to complete their respective claims to a mutual interest in the common system and outlet was completed beyond recall or repudiation of either party when the original work was done, and the act of increasing the outlet, like a joint agreement for the making of repairs or the doing of any other thing for the benefit of the common system already constructed, is incidental to the common purpose contemplated in the original undertaking. The case is not in point with *Schultz v. Huffman,* (Mich.), 86 N. W. 823, relied upon by appellant.

IV. The next exception argued is that the alleged stipulation in the agreement for submitting the apportionment of the expense to arbitrators or referees selected by the parties is not enforcible.

5. CONTRACTS: arbitration: refusal: resort to courts.

For the purposes of this case the appellant's proposition of law may be conceded, but it in no manner affects the principal agreement by which plaintiff was authorized to proceed with the work and defendant undertook to pay his proper share of the cost. The agreement if any as to arbitration, so-called, goes only to a remedy for a settlement of the rights of the parties under the contract by which the outlet was to be constructed, and if it be true that the remedy so contemplated is not available it does not close the door of the courts against a hearing in the ordinary course of legal procedure.

V. Exception is taken to the court's instruction upon the measure of plaintiff's damages.

The instruction criticised is to the effect that if plaintiff is found entitled to recover the jury shall proceed to ascertain the benefits or increase of value accruing to each farm on account of the outlet, and the amount of the verdict will then be for that proportion of the cost of the improvement which the benefit to the defendant's farm bears to the sum of the benefits to both farms. It is said that this method of arriving at the benefits is not relied upon in plaintiff's petition. To this it may be

6. PLEADINGS: erroneous prayer: effect.

answered that if a petition states a good cause of action the fact that it demands judgment upon an erroneous theory of the measure of damages will not necessarily defeat a recovery if the evidence on the trial and the instructions of the court are sufficient to sustain a recovery on the basis of a correct measure. We discover nothing, however, in the petition herein inconsistent with the rule given by the court.

Counsel further say that the contract sued upon is so vague and uncertain that it does not show "that the parties had in mind this method of estimating the share which Mr. Kelly should pay." It is entirely immaterial what either party may have had in mind as to the measure of damages for a breach of the contract if no stipulation was made with reference thereto. If the contract was otherwise complete the court will formulate the proper rule for the measure of damages. The instruction in this respect seems unexceptionable.

7. CONTRACT: "certainty:" measure of damages for breach: non-stipulation.

VI. Error is assigned upon certain rulings of the trial court upon the introduction of evidence. The defendant in presenting his case offered testimony tending in some degree to show that one Cunningham at the instance of plaintiff had blocked or stopped the tile to prevent the drainage from defendant's land. In rebuttal plaintiff put Cunningham on the stand and he denied the imputation. On cross-examination the witness was asked if he did say at a time and place mentioned that Dugger told him to stop the tile and he had done it, and if he had not made other statements of similar effect, and to these questions he answered no. When plaintiff's rebuttal had closed defendant then offered witnesses to testify that at the time and place mentioned Cunningham did say in substance that he had been hired by plaintiff to block the tile. On plaintiff's objection the testimony was ruled out, and it is of this ruling complaint is made.

8. WITNESSES: impeachment: statements out of court: form of impeaching question.

Had the offer been limited to the simple proposition that

the witness contrary to his former testimony had admitted
stopping the tile the offer might well have been upheld as
tending to discredit him, but to admit proof of his alleged
statement out of court not under oath and not in the presence
of the plaintiff that he had been bribed or employed by
plaintiff to do a wrongful act to defendant's injury would not
have been justifiable. To do so would be making it necessary
for plaintiff to enter upon a second rebuttal to deny such a
grave imputation and thus distract the attention of the jury
from the principal issue they were empaneled to try. These
assaults and counter-assaults upon the witnesses and parties
concerning matters which are material only as affecting their
credibility must end somewhere and the court did not abuse
its discretion in refusing to open the door any wider. Indeed
if we were to hold that the court erred in this ruling we should
not regard the error of a character to require a reversal of
the case.

Further complaint is made that defendant's counsel were
unduly restricted in cross-examining the witness Stewart who
was examined in behalf of plaintiff. Stewart was the witness
9. WITNESSES: who most directly corroborated plaintiff con-
cross-examina-
tion: discre- cerning the contract sued upon as well as in
tion of court. some other respects and upon cross-examina-
tion he appears to have been pursued by counsel very aggres-
sively and unrelentingly for several hours. In the course of
the grill the witness was asked in a variety of forms whether
upon a specified occasion in referring to his testimony as a
witness upon a former trial of the same cause he did not say,
"I have just got done in the trial between Dugger and Kelly
and got damned well paid for it," or other words of similar
import. Answers to these interrogatories were ruled out on
plaintiff's objection and this is said to be prejudicial error.

The ruling was correct. Proof that the witness did make
such a statement concerning a former trial would have no
tendency to rebut or disprove any statement of fact which he
made on this trial. The matter sought to be elicited from him

contains nothing to indicate what his testimony on the former trial was or to designate the party for whom such testimony was given. Assuming, however, that he stood in the same relative position to the parties on each trial the chief force and effect of the matter sought to be elicited from him was not so much to discredit the witness as to cast odium upon the plaintiff by indirection—a kind of make-weight which the court should exclude from the jury.

Complaint is also made that the court improperly permitted plaintiff to testify to offers or suggestions of compromise between the parties. The substance of his testimony was that plaintiff offered to accept $75 and discharge his claim and that defendant accepted his offer and agreed to pay it but afterward repudiated the agreement and refused to pay.

10. EVIDENCE:
offers of compromise: acceptance of compromise: distinction between.

This we are disposed to hold was not an infraction of the familiar rule that offers of compromise are not admissible in support of a contested claim or defense. In this case the witness testified not to an offer or proposal merely but to an agreement upon the sum to be paid. A mere offer of compromise is to be protected because a party to a controversy is permitted, in the interest of peace, to tender such terms as to him shall seem proper and if rejected by the other party it would be manifestly unfair to make use thereof as an admission of debt or liability. But where the offer is accepted or agreed to and the parties get together upon an amount to be paid or received we can see no good reason for excluding proof of the fact.

Without extending this discussion further it may be said that the issues in this case are purely of fact upon which the evidence was such as to entitle the parties to the verdict of a jury and we find no prejudicial error in the conduct of the trial, rulings or instructions. The case has been contested with a fierceness and pertinacity out of all proportion to the sum in controversy. It has been three times tried in the court below with the result that the accumulated costs to say nothing

of counsel fees are several times as great as the amount of the recovery. Surely a fourth trial should not be ordered unless the record discloses some error but for which we may conceive that a different result might well have been reached. No such error appears. Had these parties been endowed with wisdom to devote the money they have thus expended, or for which they have become liable, to the betterment and extension of the common improvement already constructed, both farms would doubtless now have been drained to the limit of perfection; but as it is, unless the courts find a way to put an end to their litigation, both plaintiff and defendant are liable in due time to find themselves thoroughly drained of everything but their fighting spirit.

No sufficient ground for reversal being shown the judgment of the district court is—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.