George HARMON and Clara Harmon,
Appellants,

v.

Benjamin LISS, Colonial Investment Co., and
Richard Covill, Appellees.

No. 1595.

Municipal Court of Appeals for the
District of Columbia.

Argued July 18, 1955.

Decided Sept. 15, 1955.

Joseph H. Sharlitt, Washington, D. C., for appellants.

Herman Miller, Washington, D. C., for appellee Benjamin Liss.

Jacob N. Halper, Washington, D. C., for appellees Colonial Inv. Co., and Richard Covill.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

George and Clara Harmon sued defendants, appellees herein, for damages resulting from an unlawful entry and, in a separate count, sued appellee-defendant Liss for slander. The first count of the complaint charged defendants with the unlawful and malicious entering of appellants' apartment resulting in the taking of certain personal property. The second count alleged that an agent or servant of defendant Liss, while acting within the scope of his employment and in the presence of others, uttered certain false and defamatory words in referring to property located in appellants' premises, i. e., "That is stolen property and I have come to get it", resulting in further damage to appellants.

Mrs. Harmon testified that upon returning to her third-floor apartment on September 2, 1953, she found missing therefrom a television set and table, a silverware set, and a woman's suit. Defendant Covill, manager of the premises for defendant Colonial Investment Company, informed her that on that same day he had received a complaint from another tenant relative to a water leak. In order to investigate the possibility of the leak emanating from appellants' apartment the services of a locksmith were secured to unlock the door. While conducting his investigation within the apartment, one Clark W. Ham, defendant Liss, and the locksmith came to the door of the apartment. Ham exhibited the credentials of a detective of the Metropolitan Police Department and stated to Covill, in the presence of the locksmith, "There is some stolen property here and I've come to get it." The detective then removed the television set and table from the apartment.

Detective Ham, testifying on behalf of appellants, stated that he was employed by Liss to repossess property during his off-duty hours; that he went to appellants' apartment to repossess a television set and table at the request of Liss and, meeting Covill and the locksmith downstairs, proceeded with them to the apartment. He testified that Liss did not accompany him on his mission and on cross-examination denied uttering the precise words, "I've come after a stolen television set."

Defendant Covill was called as a witness by appellants and corroborated the testimony of Mrs. Harmon pertaining to the reason, and the means used, for securing entrance to the apartment. However, he testified that in accompanying the locksmith to the apartment in order to open the door, they met a man on the third-floor landing who exhibited a folder containing his photograph and other data identifying him as Detective Ham of the local police department. The witness, testifying that he did not know where the police officer came from, stated that the officer said, "I've come after a stolen television set", and then read off the serial number of the set. The group consisting of the police officer, the complaining tenant, the locksmith and the witness entered the apartment. The television set and table were then taken by Ham.

Although Liss testified that he employed Ham to repossess the television set and table, it was his contention that the same had been merely rented to appellants with the understanding that if regular payments were made, the transaction would be changed to one of outright sale. In support of this argument, Liss introduced in evidence a rental agreement whereby he was given a "right-of-way" to appellants' premises, authorizing the use of force, if necessary, in order to repossess the property. Rebutting this, appellants produced an account card issued by Liss evidencing receipt of various payments and indicating a balance due on the set.

At the close of the evidence both sides submitted instructions to the trial judge who, after hearing argument on them, instructed the jury. A verdict in the amount of $300 was returned for appellants against Liss on the count of unlawful entry. This was later nullified by the trial court's granting Liss' motion for judgment notwithstanding the verdict. Further, the jury found for defendant Liss on the slander count.

At the outset it should be noted that although defendants Covill and the Colonial Investment Company are parties to this appeal, appellants informed this court at oral argument that appeal was being taken solely from the judgments entered for defendant Liss. Our disposition of the case requires the discussion of two questions, namely, whether the trial court's instructions to the jury clearly stated the law pertaining to slander, and whether the trial judge erred in granting defendant Liss' motion for judgment notwithstanding the verdict.

■■■ It is essential that we first dispose of the argument of Liss that the words attributable to Ham were not slanderous per se, and, in doing so, we need but apply the principle set forth in Friedlander v. Rapley, 38 App.D.C. 208, 212, wherein it was said that words spoken of another must, in order to be actionable per se, "* * * impute to him (plaintiff) the commission of some criminal offense for which he may be indicted and punished, if the charge involves moral turpitude and is such as will injuriously affect his social standing", or, as was said in Caldwell v. Hayden, 42 App.D.C. 166, the question is whether, from the language attributed to defendant, there is something from which the commission of a crime involving moral turpitude can be inferred. Applying the criteria of these cases, we believe that persons of ordinary understanding, hearing a police officer utter remarks such as those attributable to Ham, under circumstances such as these, and giving them credence, could reasonably conclude that the occupants of the apartment were being charged either with the crime of larceny or that of receiving stolen goods. The means used by Ham to accomplish the object for which he was employed were somewhat similar to those used by law enforcement officers in performing their official duties and, obviously, this was the impression intended to be given to anyone who might interfere with the attainment of that end. Thus, it would be most logical for a bystanding third person to conclude that the occupants of the apartment were subject to arrest and imprisonment when Ham, after identifying himself, stated that there was stolen property in appellants' premises and he had come to get it. The defamatory imputation[1] or inference of a criminal act was clearly manifested by the police officer and that is sufficient to support an action of this nature.

■■ Appellee Liss contends that no evidence was introduced which would indicate that the words allegedly spoken by Ham were intended to refer to appellants. However, the person slandered need not be specifically named in the defamatory language[2] as the surrounding circumstances may be such as to leave no doubt in the mind of the hearer as to his identity.[3] Appellants'

1. Washington Annapolis Hotel Co. v. Riddle, 83 U.S.App.D.C. 288, 171 F.2d 732.

2. Peay v. Curtis Pub. Co., D.C.D.C., 78 F.Supp. 305.

3. Restatement, Torts, § 564(b); 53 C.J.S., Libel and Slander, § 11(a).

evidence relative to identifying themselves as the injured plaintiffs was more than ample. See Service Parking Corporation v. Washington Times Co., 67 App.D.C. 351, 92 F.2d 502.

In view of our determination that the facts being as indicated by appellants' evidence the statement attributable to Ham would be slanderous per se, it necessarily follows that the trial court's instruction to the jury that any recovery by appellants would be contingent upon a showing of actual damages was erroneous. Some damage is presumed from words slanderous per se and damage therefore need not be alleged or proven.[4]

Confusing, if not contradictory, instructions were given the jury on the question of the liability of Liss for the defamation by Ham insofar as the principle of respondeat superior was concerned. At one point the jury was instructed that there could be no imposition of liability upon Liss for the slanderous statements if Ham had been " * * * employed only to repossess the property of the Defendant Liss, and not authorized to make any statements of charges. * * * ", and yet, in another instruction the jury was told that recovery could be had against Liss if they found the remarks of Ham to have been said " * * in order to carry out the purpose of his employment by Defendant Liss, which was to repossess the TV set * * *." In rejecting the former instruction we refer to the case of Aetna Life Ins. Co. v. Brewer, 56 App.D.C. 283, 12 F.2d 818, 46 A.L.R. 1499, wherein the court held that the failure of an injured plaintiff to satisfactorily show an authorization or ratification by an employer of the employee's slanderous statements would not bar a recovery, as the query to

be answered by the jury is whether the defamatory words were uttered by the employee while he was acting within the scope of his employment. The only bearing which evidence, or the lack thereof, of an authorization or ratification by Liss of Ham's remark would have would be in determining whether there could be an award of punitive damages against Liss. Washington Annapolis Hotel Co. v. Riddle, supra; Aetna Life Ins. Co. v. Brewer, supra. It therefore became a jury question as to whether the off-duty police officer, Ham, in making the statement attributed to him, was " * * * actuated, at least to some extent, by an intent to serve his employer * * *." See Great A & P Tea Co., Inc., v. Aveilhe, D.C. Mun.App., 116 A.2d 162, and authorities cited therein. If so, his employer, appellee Liss, must make appellants whole for the damages suffered by them.

Lastly, we find error in the granting of appellee Liss' motion for judgment notwithstanding the verdict rendered against him on the count of unlawful entry. In Nickel v. Scott, D.C.Mun.App., 59 A.2d 206, we said that, under then Municipal Court Rule 46(b), presently Rule 50(b), the trial court could consider such a motion only in cases where the movant had previously moved for a directed verdict at the close of all of the evidence.[5] We find nothing in the record before us to indicate that Liss adopted this course of action. This being so, the granting of the judgment n. o. v. must be held to have been improper and the verdict of the jury on this count must therefore be reinstated.

Remanded with instructions to reinstate the verdict rendered on the unlawful entry count and a new trial to be granted on the slander count.

Reversed and remanded.

4. Meyerson v. Hurlbut, 68 App.D.C. 360, 98 F.2d 232, certiorari denied 305 U.S. 610, 59 S.Ct. 69, 83 L.Ed. 388; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. 393.

5. See also Snyder v. Thorniley, D.C.Mun. App., 62 A.2d 316; Krupsaw v. W. T. Cowan, Inc., D.C.Mun.App., 61 A.2d 624.