William H. LUCKE and Alice D. Lucke,
Appellants,

v.

Dewey L. GUEST and Cecil R. Cox, trading
as Cox & Co., and Albert J. Fortin, Sr.,
Appellees.

No. 1675.

Municipal Court of Appeals for the
District of Columbia.

Argued Aug. 15, 1955.

Decided Sept. 15, 1955.

Rehearing Denied Oct. 10, 1955.

Jeremiah D. Griesemer, Washington, D. C., for appellants.

Herman Miller, Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Mr. and Mrs. Lucke sued for return of a deposit on the purchase price of a house, and for damages. They named as defendants the vendor of the property and also the real estate broker and his salesman. In a full and carefully prepared opinion the trial judge ruled in favor of defendants, and plaintiffs appeal.

The principal claims of error are based on alleged misrepresentations in connection with the written contract of sale which had been signed by the purchasers, by the seller and by the broker. The contract contained the usual provision for forfeiture of the deposit in the event of default by the purchasers.

One of the errors assigned is based on the claim that the broker concealed from the purchasers the fact that there were colored residents in the block. There was very little conflict in the evidence on this point. Mr. Lucke said that after signing the contract on May 8, 1954 he telephoned the agent about the presence of colored people in the block and asked him to destroy the contract and the agent promised to do so. The agent said he told Lucke to "go and ring some doorbells"; that Lucke did investigate in the neighborhood and on May 13 (five days later) Mr. and Mrs. Lucke returned and said "the Negro situation was not as bad as they thought it was" and proceeded to sign a new contract. In the course of his own testimony Mr. Lucke had said that the presence of colored people in the neighborhood did not worry him except as to resale value and that the agent had assured him he could resell without loss. The trial judge found that plaintiffs had the opportunity to fully investigate the situation for themselves before signing and that they had failed to show that the resale price of the house was adversely affected. These findings have ample support in the evidence.

Appellants cite Hiltpold v. Stern, D.C. Mun.App., 82 A.2d 123, 26 A.L.R.2d 852, for the proposition that a purchaser may recover when a vendor has won his trust and confidence and has taken undue advantage by reason of his superior knowledge and position. But that is not the situation here, as the evidence and the specific rulings of the trial court show. It is clear that the purchasers had no right to rescind or demand damages on this phase of their claim.

It is argued that the trial court should have found that the seller Guest concealed from the purchasers the true state of the title, which was not in him alone but in him and his daughter. The contract expressly stated:

"Sale is conditioned upon the Circuit Court for Prince Georges County of Maryland ratifying the sale to Dewey L. Guest which should be Monday, May the 24th, 1954."

Thus it can hardly be said that Guest or his agent concealed the truth concerning the title. There is no question that the sale was in fact ratified on May 24, thus placing Guest in a position to convey. But the question of his ability to convey good title was never reached, since the purchasers decided to rescind long in advance of any settlement date. It is settled law that a vendor need not go through the useless gesture of tendering a deed to one who has made it clear that he will not buy the property. See Harrington v. Heaney, D.C. Mun.App., 101 A.2d 838, and cases there cited. That being so, we need not consider the effect of other testimony that Guest's wife would not have joined in the deed.

Another claimed ground of rescission is that the agent misrepresented the amount of closing or settlement costs. Mr. Lucke said the agent told him the closing costs would be "$200 or so", and that it later developed that such costs would be $483. As to this the agent said he never mentioned $200 but told the Luckes that if a private loan were secured "$300 would do it" but that any government insured loan would involve a cost of $500. The trial judge was not required to accept plaintiffs' version of the conversation; and he was certainly not wrong in ruling that plaintiffs had failed to prove any obligation on the part of defendants to guarantee the amount of closing costs.

Another contention concerns a modification of the contract. In the contract of May 13, 1954 the selling price was stated as $15,950. Later the agent told Mr. Lucke that FHA had appraised the property at $15,500 and would guarantee a maximum loan of $12,400, and that this would make

it necessary for the Luckes to increase their cash payment by $150, but the selling price would be reduced to $15,500. Lucke said that when this modification was proposed to him he told the agent, "I guess I'll have to go through with it." The agent said that Lucke did not say that he was forced to accept the modified terms, but had seemed pleased with the reduction in the sale price, and had merely said, "All right". Guest agreed to the reduction in the sale price and proceeded to complete certain decorating and repairs called for in the contract. We are satisfied that the evidence fully supported the judge's finding that the parties agreed to the modification. Appellants argue that as a mere agent, the broker had no power to effect a modification; but it is clear that the broker did no more than convey to the seller and the buyers the mutual concessions to which they were agreeing and respectively binding themselves. This justified the ruling that the parties had a meeting of the minds as to the modified terms.

It is unnecessary to discuss all of the thirteen separate assignments of error, some of which are in the nature of side arguments, some do not actually reflect the rulings, below, and others have no substance in law.

We do note, however, that the trial judge also made a significant finding, based on substantial evidence, that plaintiffs' failure to complete the purchase was due to shortage of money on their part.

Like other courts, we are slow to approve forfeiture of deposit money, but in view of the evidence in the record and the explicit findings of the trial judge it must be said that appellants have established no ground for reversal.

Affirmed.