**Elizabeth S. FARNUM, Appellant,**

v.

**Ruth M. COLBERT, Appellee.**

**No. 6241.**

District of Columbia Court of Appeals.

Argued April 3, 1972.

Decided July 17, 1972.

---

Bardyl R. Tirana, Washington, D. C., for appellant.

Van A. Stilley, Washington, D. C., with whom Byron N. Scott, Washington, D. C., was on the brief, for appellee.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

Appellant Farnum brings this appeal from an adverse judgment in a civil action for slander, tried nonjury, wherein appellee Colbert was awarded $1 nominal damages and $3,000 punitive damages. The action was based upon a false statement by Mrs. Farnum that Mrs. Colbert had stolen certain property belonging to her employer. The four basic contentions are (1) that the accusatory words did not impute the commission of a crime which would give rise to a "slander per se" cause of action; (2) that no cause of action existed where the accusatory statements were not believed by those who heard them; (3) that punitive damages may not be assessed where mere nominal rather than actual damages were found; and (4) that it was error to admit into evidence the fact that appellant Farnum had settled another suit brought

against her respecting, *inter alia*, the property in question. It is the judgment of this court that error was committed in the use of the settlement of the other suit as evidence. Accordingly, we reverse and remand for a new trial. In doing so it is necessary to pass on all issues raised except the one relating to actual damages being a prerequisite to an award of punitive damages.

The testimony reveals that plaintiff, Mrs. Colbert, was a practical nurse who had been employed through Mrs. Farnum to take care of a retired General. Property belonging to the General became the subject of the accusatory statements made by Mrs. Farnum [1] to a Mrs. DeKibillan during a telephone conversation. Mrs. Farnum called Mrs. DeKibillan and, while referring to Mrs. Colbert in a derogatory way, said that she had "cleaned the General out", and that she had also stolen a movie projector and record player. Mrs. Colbert and her daughter were visiting Mrs. De-Kibillan at the time of the call and the daughter was listening on an extension when the statements were first made. Unknown to Mrs. Farnum, Mrs. DeKibillan then had Mrs. Colbert listen and prompted a repetition of the slanderous statements. Testimony indicated that the statements were untrue. The testimony also revealed that no one believed them to be true. There was substantial evidence relating to Mrs. Farnum's relationship with the General and the fact that she had removed certain objects from the General's house with no intention of returning them. Facts relating to a court-approved settlement of a suit brought by the General's conservator for recovery of the property taken by Mrs.

Farnum were admitted into evidence over objection.

The trial judge found that Mrs. Farnum's utterances were "slander per se" and that Mrs. Colbert was not required to show actual damages in order to successfully recover, hence the award of $1 nominal damages and $3,000 punitive damages. The judge's award of punitive damages was founded upon the existence of actual malice and recklessness as evidenced by Mrs. Farnum's own taking of the General's belongings and the fact that she agreed to the settlement of the other case.

■■■ The initial question relates to the definition and elements of a cause of action for "slander per se". In order for words spoken to be actionable per se, such words must

" '. . . impute to him (plaintiff) the commission of some criminal offense for which he may be indicted and punished, if the charge involves moral turpitude and is such as will injuriously affect his social standing', or, . . . the question is whether, from the language attributed to defendant, there is something from which the commission of a crime involving moral turpitude can be inferred. . . .' " [Harmon v. Liss, D.C.Mun.App., 116 A.2d 693, 695 (1955)]. (Citations omitted.)

Under this rule of law, actions have been properly characterized as "slander per se" where people were accused of theft of a television set,[2] a money deposit,[3] and even a box of Chiclets.[4] The language used in the instant case is no less susceptible of conveying an accusation of theft. The

---

1. The General and Mrs. Farnum were close friends.

2. Harmon v. Liss, D.C.Mun.App., 116 A. 2d 693 (1955) ("I've come after a stolen television set.").

3. Washington Annapolis Hotel Co. v. Riddle, 83 U.S.App.D.C. 288, 171 F.2d 732 (1948) ("Miss Riddle, if you tell me

what you done with the rest of that money, we won't prosecute.").

4. Roper v. Great Atlantic & Pacific Tea Co., D.C.Mun.App., 164 A.2d 478 (1960) ("I believe your daughter would like to have you pay for these [Chiclets]." . . "Because your daughter stuffed her pockets full of them back there at the candy counter.").

cause of action was therefore appropriately brought under the theory of "slander per se".

■ The contention that the cause of action should fail because no one believed the statements is without merit. The nature of a cause of action under the theory of "slander per se" allows the court to overlook any facts relating to damages for the reason that the false words spoken inherently tend to damage a person's reputation. Restatement of Torts § 569 (1938). Whether the statements were believed therefore becomes irrelevant in testing the evidentiary sufficiency in an action for "slander per se". The legal sufficiency of such a case is not affected by absence of demonstrable harm to reputation. Restatement of Torts § 559, comment d (1938). *Cf.* Roper v. Great Atlantic & Pacific Tea Co., D.C. Mun.App., 164 A.2d 478 (1960).

■■ The fact that Mrs. Farnum had settled a suit brought by the General's conservator for return of converted property was admitted into evidence on the theory that this fact was relevant to the element of malice or recklessness in the tortious act. It is generally recognized that "[a]n offer made in compromise is not admissible in evidence." Firestone Tire & Rubber Co. v. Hillow, D.C.Mun.App., 65 A.2d 338, 339 (1949). *See also* McMahon v. Matthews, 48 App.D.C. 303 (1919). The rule is grounded in a policy which encourages settlement of disputes without trial. However, a refinement of this rule recognizes that when an offer of compromise is accepted and thus becomes a settlement agreement, and is later repudiated, this policy consideration no longer dictates exclusion of the agreement as evidence. Pitts v. United States, D.C.Mun.App., 95 A.2d 588, 589 (1953); Hiltpold v. Stern, D.C.Mun. App., 82 A.2d 123 (1951). The distinction seems to be that a mere offer of compromise is in the nature of a hypothetical admission against interest while a repudiated settlement agreement deals with an accomplished fact.

The policy of allowing litigants to buy their peace without fear of future or collateral consequences has also dictated that completed settlements not be admitted into evidence in certain cases involving third parties and subsequent litigation. A typical example of such a case is Hawthorne v. Eckerson Co., 77 F.2d 844 (2d Cir. 1935). In that case Judge A. Hand confronted a situation where a tort claimant in an automobile accident tried to introduce evidence of a settlement made by the alleged tortfeasor and another claimant. Although it was claimed that the evidence of the settlement was relevant to the issue of agency in the case and not prejudicial, the court held:

"Settlements have always been looked on with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having a settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction. . . ." *Id.* at 847.

*See also* Bratt v. Western Air Lines, Inc., 169 F.2d 214 (10th Cir. 1948) (evidence of settlement agreement excluded in the face of relevance to issues of motive and bias or prejudice); and *see* Shreve v. Hot Shoppes, Inc., 184 F.Supp. 436 (D.D.C.1960), aff'd, 110 U.S.App.D.C. 268, 292 F.2d 761 (1961).

■ In the case at bar, the evidence was of a completed settlement and not a mere offer of compromise. It may be noted that the settlement in the suit brought by the conservator did not involve a common question of liability with the subsequent suit brought by Mrs. Colbert for slander. However, it cannot be contended that the two suits are completely unrelated because each quite directly deals with the converted or allegedly converted property once belonging to the General. That property and who

took it directly relate to the issues of falsity and malice in this case. We hold that it was error for the trial judge to admit as evidence and then consider as significant the fact of this settlement agreement.

The judgment is reversed and the cause remanded for a new trial.

So ordered.