**CROIXLAND PROPERTIES LIMITED PARTNERSHIP, A Wisconsin Limited Partnership, Appellant,**

v.

**Thomas J. CORCORAN, et al., Appellees.**

No. 98–7097.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1999.

Decided April 13, 1999.

Robert H. Friebert argued the cause for appellant. With him on the briefs were Robert P. Trout and John Thorpe Richards, Jr.

Robert M. Adler argued the cause for appellees. With him on the brief was Gary C. Adler.

Before: WILLIAMS, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In 1993, Croixland, the owner of a greyhound dog racing facility in Hudson, Wisconsin, entered into an agreement with three Indian tribes to sell the track and thereafter to manage jointly casino operations that the tribes would own. A precon-

dition to the agreement was the purchase of the facility land in trust by the Department of Interior under the Indian Regulatory Act, *see* 25 U.S.C. § 465 (1994), and approval of gaming activities on that land under the Indian Gaming Regulatory Act, *see* 25 U.S.C. § 2719(b)(1)(A)(1994). The Minnesota Area Director of the Department recommended approval of the tribes' application in the fall of 1994, but on July 14, 1995, the Deputy Assistant Secretary of Indian Affairs denied the application. After learning in the course of other litigation about actions in Washington, D.C. taken by lobbyists for Indian tribes opposing the sale, Croixland sued the lobbyists for defamation and conspiracy to defame.[1] The district court dismissed the complaint for failure to state a cause of action. We reverse.

## I.

■ This court reviews the dismissal of a complaint under Federal Rules of Civil Procedure 12(b)(6) *de novo.* *See Chandler v. District of Columbia Dep't of Corrections,* 145 F.3d 1355, 1360 (D.C.Cir. 1998). We must accept the allegations of the complaint as true, drawing all inferences in the plaintiff's favor, and will affirm "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Harris v. Ladner,* 127 F.3d 1121, 1123 (D.C.Cir.1997).

■ To succeed on a defamation claim, the plaintiff must show:

(1) that the defendant made a false and defamatory statement concerning the

plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Crowley v. North Am. Telecomm. Ass'n,* 691 A.2d 1169, 1172 n. 2 (D.C.1997) (quotations omitted); *see also Restatement (Second) of Torts* § 558 (1976).[2]

■ Croixland's complaint alleged that the lobbyists had conspired to convince decisionmakers in Washington, D.C. reviewing the tribes' application that Croixland had connections to organized crime. *See* Compl. ¶ 20. Insofar as is relevant to this appeal, the complaint alleged that the lobbyists, "by publishing the defamatory statement that plaintiff [i.e., Croixland] was connected to organized crime, intended to injure plaintiff in its business reputation and to cause the Department of Interior to deny approval of the proposed Hudson casino." *Id.* ¶ 29. To this end, the lobbyists falsely stated, according to the complaint, that "a company named Delaware North was the owner of the Hudson greyhound facility, that Delaware North was connected to organized crime, and that approval of the Hudson casino would allow organized crime to be directly involved in Indian gaming." *Id.* at ¶ 20. To support their false statements that Croixland was connected to organized crime, the lobbyists agreed to distribute an article appearing in the November 17, 1994, edition of the *Wall Street Journal* purporting to describe Delaware North's

---

1. For ease of reference we refer to appellees as "the lobbyists." Croixland sued Thomas J. Corcoran, Patrick E. O'Donnell, and Larry Kitto as defendants, but in their complaint refer to conduct by defendants and "other persons known and unknown." *See* Comp. ¶ 20.

2. The lobbyists cite *Caudle v. Thomason,* 942 F.Supp. 635, 638–39 (D.D.C.1996), for the

proposition that heightened pleading requirements apply in defamation cases. In fact, as with any pleading, Croixland's complaint must allege the elements of the cause of action; the Federal Rules of Civil Procedure impose no special pleading requirements for defamation as they do for a specified list of other matters. *See, e.g.,* Fed.R.Civ.P. 9.

ties to organized crime.[3] *Id.* One of the lobbyists—Scott Dacey, not one of the defendants—met with and gave the article to the Deputy Assistant Secretary of Indian Affairs. *Id.* ¶ 22. The complaint referred as well to a strategy by the lobbyists to get a story in the *Washington Post* about Delaware North's relationship with tracks in Wisconsin. *Id.* ¶ 21.

The complaint also alleged that a defamatory statement was made to Senator John McCain during a meeting in June 1995, where the lobbyists stated that "the owners of the Hudson greyhound facility are connected to organized crime."[4] *Id.* ¶ 26; *see also id.* ¶ 23. Senator McCain allegedly told the lobbyists that he intended to ask the Justice Department to look into the Hudson casino application. *Id.* ¶ 26. After the tribes' application was denied, the lobbyists sent Senator McCain a letter, reminding him of their meeting "regarding the proposed conversion of a dog track in Hudson, Wisconsin, to an Indian gaming casino which would bail out the dog track owner, Delaware North of Buffalo, New York," and thanking him for his "help with the Department of Justice." *Id.* The letter stated that "[w]ithout your assistance, we do not believe the BIA [Bureau of Indian Affairs] headquarters would have overturned its Minneapolis area office on this matter." *Id.* In addition, the complaint alleged that the lobbyists repeated the defamatory statement that the owner of the Hudson facility was connected to organized crime. *Id.* ¶ 38.

In dismissing the complaint, the district court focused on whether the alleged de-

famatory statements were "of and concerning" Croixland. Croixland had alleged that it was defamed when the lobbyists reported to Department officials and others that the owner of the Hudson track had connections to organized crime, either directly or through Delaware North's ownership. The lobbyists responded that they only made statements about Delaware North, and consequently no reasonable listener would think they were referring to Croixland. The district court agreed with the lobbyists and ruled that because during the meeting with Senator McCain, in the subsequent letter to him, and in the newspaper article, there was no mention of Croixland by name and no indication that any listener understood that the references were to Croixland, the complaint failed to allege defamatory statements "of and concerning" Croixland.

■ To satisfy the "of and concerning" element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed. *See, e.g., Peck v. Tribune Co.*, 214 U.S. 185, 188–90, 29 S.Ct. 554, 53 L.Ed. 960 (1909); *Washington Post Co. v. Kelly*, 38 F.2d 151 (D.C.Cir.1930); *Harmon v. Liss*, 116 A.2d 693, 695 (D.C. 1955); *see also Service Parking Corp. v. Washington Times Co.*, 92 F.2d 502, 504–05 (D.C.Cir.1937); *Caudle*, 942 F.Supp. at 638; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 111, at 783 (5th ed.1984); *Restatement (Second) of Torts* § 564 (1977). The complaint refers to statements that were not just about

---

**3.** The November 17, 1994 *Wall Street Journal* article by John R. Emshwiller, entitled "Sins of the Father? Concession King's Son Fights Mob Stigma As He Builds Empire; Delaware North's Businesses Appear Gangster–Free, But Regulators Wonder; Hosting You at Yosemite," describes Delaware North as having "more than 200 operating units in 39 states and six countries." The article reported that in 1972 the company (then known as Emprise Corporation) was convicted of conspiracy "to hide its ownership interest and the interests of two reputed mob figures in the Frontier Casi-

no in Las Vegas." Since then no such ties had been uncovered, due in part to the current owner's efforts, including hiring "former top federal law enforcement officials" to rid the company of any such ties. The newspaper article noted, however, that state and federal regulators remained skeptical.

**4.** At the time of the meeting, Senator McCain was chairman of the Senate Committee on Indian Affairs. *See* Congressional Staff Directory (1995).

Delaware North as Delaware North but rather were about Delaware North in its alleged capacity as the owner the Hudson facility. Insofar as Croixland was the true owner, even if never named, it could be defamed in its status as the owner.

*Grisanzio v. Rockford Newspapers, Inc.*, 132 Ill.App.3d 914, 87 Ill.Dec. 679, 477 N.E.2d 805 (1985), on which the lobbyists rely, is not to the contrary. Grisanzio operated a restaurant in a building that was owned by Zammuto, who was reputed to be part of the mob. After a newspaper reported Zammuto's mob connections, Grisanzio sued. The court dismissed his complaint because he was never mentioned by name and a reader of the article would reasonably perceive the distinction between the operator of a restaurant and the owner of the building. *Id.* at 809–10. By contrast, in the instant case, the alleged references to "the owner of the Hudson track" afford no such distinction for the listener.[5] So too, *Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 456 N.Y.S.2d 44, 442 N.E.2d 442 (1982), is of no assistance to the lobbyists. In that case the court rejected the notion that a reader learning that the 38–year–old owner of a grocery store had been arrested on gambling charges would perceive that statement to be "of and concerning" the corporation that in fact owned store, especially since a corporation cannot be arrested. By contrast, given the conduct at issue and context of the statements in the instant case, the substitution of the name of one corporation, Delaware North, for another, Croixland, as "the owner of the Hudson facility," presents the possibility that a listener could perceive that the true owner is connected to organized crime.

Consequently, there are two ways that Croixland's complaint sufficiently pled the "of and concerning" element. First, the complaint alleged that the lobbyists linked Croixland to Delaware North and Delaware North to organized crime. Even if the lobbyists misidentified the owner of the facility, it did not remove the taint to the true owner. This is due in part to the fact that Delaware North managed and operated gambling enterprises in a number of states, *see supra* n. 3, and assertions of its ownership did not rule out that it had a management agreement or affiliate relationship with Croixland that was consistent with Croixland's ownership of the Hudson facility. In any event, the assertion that "the owner" had mob connections sufficed to place in jeopardy Croixland's opportunity with the tribes inasmuch as mob connections would doom the tribes' application pending in the Interior Department.

Second, the complaint alleged that Croixland was defamed because statements were made about "the owner of the track" having connections to organized crime without reference to Delaware North. It is undisputed, for purposes of the motion to dismiss, that Croixland is the owner of the Hudson track. Compl. ¶ 7. Viewing the inferences most favorably to Croixland, a reference to "the owner of the track" could reasonably be understood to mean Croixland even if the listener did not know Croixland by name. *See Harmon v. Liss*, 116 A.2d 693, 695 (D.C.1955). The defamation would arise from the inference that the owner of the track is connected to organized crime where there is no ambiguity that a particular entity owns the track. Drawing favorable inferences for the nonmoving party, *see Chandler*, 145 F.3d at 1360, and viewing the alleged remarks from the perspective of the listeners, *see Kelly*, 38 F.2d at 151, *Caudle*, 942 F.Supp. at 638, it follows that, in the context of discussions about a pending tribal application at the Interior Department for the sale of Croixland's track, the lobbyists' defamatory statements could lead listeners such as Department officials or the Chairman of the Senate Committee on Indian

5. Furthermore, Illinois employs the rule of innocent construction, *see Grisanzio*, at 809, and the District of Columbia does not, *see* *Ollman v. Evans*, 750 F.2d 970, 980 n. 18 (D.C.Cir.1984) (in banc).

**218**

Affairs to believe that Croixland was connected in some manner to Delaware North or at least that whoever owned the Hudson track was connected to organized crime.

██ Furthermore, even assuming that references to Delaware North as the owner of the Hudson track were not "of or concerning" Croixland, the complaint still was not properly dismissed. Under Federal Rule of Civil Procedure 8(e), a complaint may contain alternative theories, and if one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint.[6] Croixland's complaint included an alternative theory, namely that defamatory statements were made directly about Croixland without reference to Delaware North. This appears in paragraph 26 of the complaint, referencing the meeting with Senator McCain, paragraph 29, regarding the lobbyists' intent to injure Croixland's business reputation and cause the Department to deny approval of the proposed Hudson casino, and paragraph 38, concerning conspiracy, in which Croixland alleges numerous publications of the defamatory statement by the lobbyists that the owner of the Hudson facility had connections to organized crime.

Accordingly, we reverse the order dismissing the complaint and remand the case for further proceedings.

6. "A party may set forth two or more statements of a claim.... [and] [w]hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Fed.R.Civ.P. 8(e).